PUBLISH

**UNITED STATES COURT OF APPEALS**

**Filed 3/15/96**

**TENTH CIRCUIT**

---

MARC THIRY, DIANE DE FRIES THIRY,
and JOHN D. DE FRIES TRUST,

       Plaintiffs - Appellants,

       v.

E. DEAN CARLSON, Kansas Secretary of
Transportation; KANSAS STATE
DEPARTMENT OF TRANSPORTATION;
CITY OF BASEHOR, KANSAS; CITY OF
TONGANOXIE, KANSAS; and COUNTY OF
LEAVENWORTH, KANSAS,

       Defendants - Appellees,

   and

UNITED STATES OF AMERICA,

       Intervenor.

No. 95-3178

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-CV-2425)**

---

Theodore James Lickteig, Lenexa, Kansas, for Plaintiffs-Appellants.

Michael J. Davis, Stinson, Mag & Fizzell, P.C., Kansas City, Missouri (Michael B. Rees,
Office of Chief Counsel, Kansas Department of Transportation, Topeka, Kansas, with
him on the brief) for Defendants-Appellees.

---

Before **ANDERSON**, **McKAY,** and **JONES**,[*] Circuit Judges.

------

**ANDERSON,** Circuit Judge.

------

The central question in this case is whether the plaintiffs' rights under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1 to -4 ("RFRA"), would be violated if a parcel of their property containing the grave of their stillborn daughter is taken for public highway purposes, necessitating the relocation of the gravesite. Two related questions under 42 U.S.C. § 1983 are whether this condemnation action would violate the plaintiffs' First Amendment right to the free exercise of their religion, and their Fourteenth Amendment substantive due process rights of family unity and integrity. The district court answered these questions in the negative. We agree. The plaintiffs' rights under RFRA will not be violated because, under the facts found by the district court, this taking for public highway purposes will not substantially burden the free exercise of their religion. And, the plaintiffs' First and Fourteenth Amendment rights will not be violated because the taking is part of a neutrally applied project, not directed at the plaintiffs' religion, the effects are incidental, and the plaintiffs can still practice

------

[*]The Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals, Sixth Circuit, sitting by designation.

their religion and maintain the integrity of their family despite the relocation of their daughter's gravesite. Accordingly, we affirm the judgment of the district court.

**FACTS**

The plaintiffs-appellants, Marc and Diane De Fries Thiry, husband and wife, reside on the Stranger Creek Ranch, a 151 acre parcel of property in Tonganoxie, Kansas. The plaintiff-appellant, John D. De Fries Trust (collectively referred to along with the Thirys as "the Thirys"), owns legal title to the property. Diane De Fries Thiry is a beneficiary of the Trust.

The Kansas Department of Transportation ("KDOT") is engaged in a project to improve a portion of U.S. Highway 24, which passes along the edge of the Thiry property. The project design calls for a wider median which will accommodate periodic "turn-around areas" large enough to ensure the safety of vehicles passing through or turning around in those areas. This design requires the acquisition of some adjacent private property, including a four-acre parcel of the Thiry property. The ashes of the Thirys' stillborn baby, Qatlin Soux De Fries Thiry, are buried in this four-acre site, having been placed there in 1993, seven or eight months after the stillbirth. A large quartzite boulder serves as a headstone for the grave. The Thirys placed a three-foot tall wooden cross at the grave sometime after the burial. If the KDOT highway improvement project takes the land containing Qatlin's gravesite, the grave presumably will be moved

to another location designated by the Thirys. According to the Thirys, this disturbance and the loss of the existing gravesite will burden their religion. The district court's findings respecting the Thirys' religious beliefs and practices are substantially uncontested on appeal, and, in any event, are not clearly erroneous. We set them out verbatim as follows:

**The Thirys' Religious Beliefs**

11. Diane De Fries Thiry is one-thirty-second Delaware Indian. She believes in and practices many tenets of American Indian spirituality which includes beliefs in God as creator, the sanctity of all life, life after death, and the sanctity of gravesites.

12. Diane De Fries Thiry also believes in and practices many tenets of Quakerism and Christianity. These beliefs include baptism by the Holy Spirit rather than by water, peaceable resistance on matters of disagreement, an absence of ritual in worship, a direct relationship with God by an individual without the need for clergy, and sharing of experiences with God in worship services. The Thirys were married in November 1989 at the Stanwood Friends Meeting in McLouth, Kansas, in a Quaker service.

13. Marc Thiry believes in and practices many tenets of Christianity which include observance of a sabbath, or day of rest, the Ten Commandments, God as creator and supreme being, and the existence of sacred places. Marc Thiry also believes in and practices many tenets of American Indian spirituality which include reverence for all things created by God and harmony with other life forms on earth.

14. The area immediately surrounding the red boulder, including the gravesite, is a place which holds special meaning for the Thirys. Diane De Fries Thiry has gone to that area to pray since she was seven years old. The area was also a place of prayer for Marc Thiry prior to his marriage to Diane. The Thirys practice their religious beliefs by visiting the area to be near the spirit of their deceased child and to worship and pray. The Thirys plan to be buried alongside the grave of their child.

15. The Thirys believe that their religious beliefs and practices will continue even if KDOT is allowed to proceed with its condemnation action and construction of the planned highway improvements. The Thirys have in the past prayed, worshiped, and felt a closeness with God at places other than the area around the red boulder.

16. The Thirys have maintained a closeness with the spirit of their daughter continuously since her death, even during the six to seven months before her burial.

17. Christian beliefs in the sanctity of burial sites are not violated by moving gravesites when necessary, and moving the gravesites would not be inconsistent with tenets of American Indian spirituality if the Thirys believed it to be necessary. Although a site for prayer and worship is important to Quakers, a basic tenet of Quakerism is that God is within individuals and one particular location is no more or less sacred than another. Despite their beliefs in the sanctity of burial sites, the Thirys would agree to move their child's grave if they believed that it was required in order to build a safe highway.

Memorandum and Order, dated May 8, 1995, at 5-7, R. Vol. I at 183-85.

The district court also reviewed at length the facts concerning the highway project finding, among other things, that "[t]he widened medians are necessary for public safety." Id. at 8, R. Vol. I at 186. The Thirys first became aware of the proposed taking in November 1993, and filed their complaint on October 28, 1994, seeking to enjoin KDOT's condemnation proceedings. The district court entered a temporary restraining order that same day and granted a partial preliminary injunction on December 16, 1994. On May 8, 1995, the district court dissolved the preliminary injunction and entered judgment in favor of KDOT. On June 12, 1995, the ruling to dissolve the preliminary

injunction was stayed and the preliminary injunction was reinstated during the pendency of this appeal.

## DISCUSSION

## I. <u>RFRA</u>

The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 to -4, provides in pertinent part as follows:

**§ 2000bb-1. Free exercise of religion protected**

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

The Act imposes three threshold requirements: the government action must 1) substantially burden 2) a religious belief rather than a philosophy or way of life, 3) which belief is sincerely held by the plaintiff. See <u>id.</u>; <u>Thomas v. Review Bd.</u>, 450 U.S. 707, 713-18 (1981); <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-19 (1972); <u>Werner v.</u>

McCotter, 49 F.3d 1476, 1479 n.1, 1480 (10th Cir.), cert. denied, 115 S. Ct. 2625 (1995).
The plaintiff has the burden of proving these requirements by a preponderance of the
evidence. See Werner, 49 F.3d at 1480 n.2. On review, the requirements, although
largely factual in nature, present mixed questions of fact and law. We review the
meaning of the Act de novo, including the definitions as to what constitutes a substantial
burden and what constitutes a religious belief, and the ultimate determination as to
whether the Act has been violated in either of those respects. Sincerity is a factual matter.
As to historical and other underlying factual determinations we defer to the district court,
reversing only if the court's findings are clearly erroneous.

There is no dispute in this case over the district court's findings that religious
beliefs sincerely held by the Thirys are implicated. The remaining threshold question,
then, is whether those beliefs will be substantially burdened by the relocation of their
daughter Qatlin's gravesite and use of the present site for public highway purposes.[1]

In a case strikingly similar to the one before us, Lyng v. Northwest Indian
Cemetery Protective Ass'n, 485 U.S. 439 (1988), the Supreme Court established what
constitutes a burden on religious beliefs and practices, including traditional Indian
religious practices. It stated that the incidental effects of otherwise lawful government

---

[1]Although the issue was raised below, the parties raise no issue on appeal as to the
constitutionality of RFRA. Cf., Flores v. City of Boerne, 73 F.3d 1352 (5th Cir. 1996)
(rejecting the constitutional challenge to RFRA). Accordingly, we confine our analysis to
the statute.

programs "which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion. Id. at 450-51.[2]

In Werner we said that to exceed RFRA's "substantial burden" threshold, government regulation--

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of . . . [an individual's] beliefs; must meaningfully curtail [an individual's] ability to express adherence to his or her faith; or must deny [an individual] reasonable opportunities to engage in those activities that are fundamental to [an individual's] religion.

Werner, 49 F.3d at 1480 (citations omitted).

Werner is a prisoner case, which may explain why we failed entirely to address the Court's "substantial burden" standard in Lyng. The reasoning of Werner, however, is too broad to permit a prisoner/nonprisoner distinction. Regardless, in this case it is unnecessary for us to attempt to harmonize Werner's language with Lyng, or to explore its ramifications, since as the district court found, the Thirys did not carry their burden of proof under any plausible reading of the statute.

----

[2]The Thirys attempt to distinguish Lyng on the basis that the government in that case was building a highway over public land, while the proposed highway in the instant case will take private land. We are unpersuaded. The Court's analysis in Lyng did not rest on property ownership. Rather, it focused on the nature and extent of the intrusion on religious beliefs and practices as such. Cf. Badoni v. Higginson, 638 F.2d 172, 176 (10th Cir. 1980), cert. denied, 452 U.S. 954 (1981); Grosz v. City of Miami Beach, 721 F.2d 729, 740 (11th Cir. 1983), cert. denied, 469 U.S. 827 (1984); Sequoyah v. Tennessee Valley Auth., 620 F.2d 1159, 1164 (6th Cir.), cert. denied, 449 U.S. 953 (1980).

- 8 -

While the Thirys establish that they will be both distressed and inconvenienced over the relocation of their daughter's gravesite and loss of access to that particular site itself, they also testified that they will still continue their religious beliefs and practices even if the condemnation proceeds as planned. R. Vol. III at 548-49, 562-64. They concede that they have worshiped, prayed, and drawn near to God in places other than the gravesite area. Id. at 545-58, 563. Furthermore, a basic tenet of Quakerism is that God is within individuals and one particular location is no more or less sacred than another. R. Vol. II at 324, 501, 524, 527-28.

The Thirys further testified that they have maintained a continuous closeness with Qatlin's spirit since her death, including the period of more than half a year before her burial at the site in question. R. Vol. III at 549, 560-61. Their American Indian spirituality and Christian beliefs also allow for the moving of gravesites when necessary. R. Vol. II at 324, 331, 506-07, 520. And, despite their belief in the sanctity of burial sites, and this site in particular, the Thirys testified that they would agree to move Qatlin's grave if they believed it was necessary to ensure a safe highway. R. Vol. II at 340, 395-98, 400; R. Vol. III at 563, 565-66.[3]

_____

[3]On appeal, the Thirys dispute the necessity of KDOT's proposed highway, contending that the median turn-around area could be located in another place or made narrower to preserve the gravesite. However, because the Thirys failed to prove that they will be substantially burdened, it is unnecessary to address the intricacies of the proposed highway construction.

In sum, after carefully considering all of the Thirys' arguments on appeal, and the record below, we conclude that the district court did not err in its determination that the Thirys' rights under RFRA will not be violated by the condemnation in question because the taking will not substantially burden their exercise of religion.

## II. SECTION 1983

The Thirys' second claim, brought pursuant to 42 U.S.C. § 1983, argues that KDOT's proposed action violates their rights under the Free Exercise Clause of the First Amendment. In Employment Div., Dept. of Human Resources v. Smith, 494 U.S. 872 (1990), the Supreme Court held that a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice. Id. at 878-79; see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 113 S. Ct. 2217, 2226 (1993) ("[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."). The Thirys admit that KDOT's proposed actions are neutral and generally applicable and further concede that they are "being treated [no] differently as against other believers because of their faith." Appellants' Br. at 19. We therefore conclude that the Thirys have failed to establish a violation of their rights guaranteed by the Free Exercise Clause of the First Amendment.

The Thirys' final claim, also brought pursuant to § 1983, alleges their substantive due process rights to family unity and integrity, guaranteed by the Fourteenth Amendment, were violated. They attempt to fall within the "hybrid" exception recognized by <u>Smith</u> for cases that involve "the Free Exercise Clause in conjunction with other constitutional protections." <u>Smith</u>, 494 U.S. at 881 & n.1; <u>see also</u> <u>Yoder</u>, 406 U.S. at 232-33 (invalidating a compulsory school attendance law because of the interrelationship between the Amish's belief and daily conduct in the continued survival of Old Order Amish communities and their religious institution). We agree with the district court that nothing which KDOT proposes would preclude the fulfillment of the Thirys' desire to be buried alongside the grave of their daughter. Accordingly, even assuming arguendo that family unity and integrity are protected as liberty interests under the Fourteenth Amendment, we find no basis for the Thirys' claim that KDOT's actions will interfere with these interests.

**CONCLUSION**

We thus conclude that the Thirys have failed to sustain their burden of establishing a violation under RFRA, the Free Exercise Clause, or the Fourteenth Amendment.

The judgment is accordingly AFFIRMED.