SHEPHERD MONTESSORI CENTER MILAN v ANN ARBOR
CHARTER TOWNSHIP

Docket Nos. 233484, 234300. Submitted April 15, 2003, at Grand Rapids.
Decided November 6, 2003, at 9:05 A.M. Leave to appeal sought.

Shepherd Montessori Center Milan, which operated a Catholic
Montessori day care program on leased premises in a section of
Ann Arbor Charter Township zoned office park district (OP),
requested from an Ann Arbor Township zoning official a determina-
tion whether its proposed use of adjacent property as a Catholic
Montessori school for twenty-five children in kindergarten through
the third grade would be allowed under the township's zoning ordi-
nance. The adjacent property had been occupied by Rainbow Ras-
cals, a nonreligious preschool day care program, pursuant to a zon-
ing variance that allowed it to accommodate up to one hundred
children of office park and nonoffice park employees despite the
fact that the zoning ordinance allowed day care centers in OP dis-
tricts only for children of office park employees. The zoning official
denied approval of the proposed use, determining it to be use as a
primary school, which use is not permitted in OP districts under the
ordinance. Shepherd Montessori appealed the official's decision to
the Ann Arbor Charter Township Zoning Board of Appeals (ZBA),
seeking a reversal of the official's decision, a use variance, and a
determination that its proposed use could be considered a substi-
tute for the Rainbow Rascals preschool day care program. The ZBA
rejected the appeal and denied the relief sought. Shepherd Montes-
sori filed a complaint in the Washtenaw Circuit Court against Ann
Arbor Township and others, alleging a violation of the Religious
Land Use and Institutionalized Persons Act (RLUIPA), 42 USC
2000cc, and violations of substantive due process, procedural due
process, and equal protection. The plaintiff also sought an order of
superintending control, an appeal of the ZBA decision, and a prelimi-
nary injunction. The parties moved for summary disposition, and
the court, Melinda Morris, J., granted the defendants' motion and
denied the plaintiff's motion. The court also affirmed the ZBA's deci-
sion and denied the plaintiff's requests for an order of superintend-
ing control and a preliminary injunction. The plaintiff appealed as
of right and by leave granted, and the appeals were consolidated.

The Court of Appeals *held*:

1. The trial court erred in summarily dismissing the plaintiff's RLUIPA claim. The RLUIPA prohibits any government from imposing or implementing a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that the imposition of the burden on that person, assembly, or institution is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 USC 2000cc(a)(1). In order to pursue a claim under the RLUIPA, a party must establish at least one of three jurisdictional elements. 42 USC 2000(a)(2). In this case, the plaintiff established the element provided in 42 USC 2000(a)(2)(c), which states: "the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." An individualized assessment was made when the ZBA affirmed the zoning official's decision that a primary school was not a permitted use in the OP district, denied the plaintiff's application for a use variance, and denied the plaintiff's request for a substituted, nonconforming use. The grant of summary disposition of the RLUIPA claim was premature in light of remaining issues of material fact concerning whether the defendants, in enforcing the zoning ordinance to disallow the operation of a faith-based primary school, imposed a substantial burden on religious exercise. On remand, the trial court must consider (1) whether there are suitable alternative locations in the area that would allow the school consistent with the zoning laws, (2) the proximity of the homes of parents who would send their children to the school, and (3) the economic burdens on the plaintiff of maintaining its day care and school at separate locations.

2. The trial court erred in summarily dismissing the plaintiff's equal protection claim. Material issues of fact remain concerning whether the plaintiff was treated differently than another who was similarly situated (Rainbow Rascals) and that the selective treatment was based on the impermissible consideration of religion. The plaintiff, which seeks a variance to allow the operation of a primary school, and Rainbow Rascals, which was granted a variance that allowed it to provide day care for children of parents who did not work in the office park, appear to be similarly situated. The plaintiff's request for a variance does not appear to

require any more of a deviation from the zoning ordinance than the variance granted to Rainbow Rascals.

3. The trial court's decision on the appeal from the ZBA decision was premature in light of unresolved issues relating to the RLUIPA and equal protection claims. The appeal must be resolved consistent with the ultimate determination of these issues.

4. The trial court did not err in summarily dismissing the plaintiff's claim of violation of substantive due process. Contrary to the plaintiff's contention, the exclusion of schools from OP districts under the ordinance is reasonable and serves a legitimate governmental interest connected to the public's health, safety, and welfare.

5. The trial court did not err in summarily dismissing the plaintiff's claim that the ordinance is unconstitutionally vague. The plaintiff's claim did not involve a contention that the ordinance is vague; rather, it reflected a disagreement with the exclusion of schools from OP districts, and a disagreement with how the township exercised its discretion to grant a variance to Rainbow Rascals but not to the plaintiff. Thus, the plaintiff provided no basis for invalidating the ordinance as unconstitutionally vague.

6. The trial court did not err in summarily dismissing the plaintiff's claim of violation of procedural due process. The plaintiff's procedural due process claim is based entirely on its claim that the ordinance was unconstitutionally vague, a claim already rejected by the Court of Appeals. Furthermore, a claim that an ordinance is unconstitutionally vague more correctly relates to a substantive due process claim.

7. The trial court did not abuse its discretion in refusing to issue an order of superintending control, which may not be granted where, as here, an adequate legal remedy is available.

8. Whether the trial court erred in denying the plaintiff's request for a preliminary injunction need not be addressed at this juncture in light of the unresolved claims involving the RLUIPA and equal protection. The plaintiff is free to renew its motion for a preliminary injunction on remand.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. ZONING — VARIANCES — FAITH-BASED SCHOOLS — RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT.

A determination by a township zoning board of appeals to affirm a zoning official's decision that a faith-based primary school is not a permitted use in a zoning district under the township zoning ordinance, to deny the school's application for a use variance under the

ordinance, and to deny the school's request to be considered a substituted, nonconforming use in place of use as a day care center previously permitted under a variance granted pursuant to the ordinance constitute an individualized assessment of the proposed use for purposes of establishing a jurisdictional requirement of the Religious Land Use and Institutionalized Persons Act, which prohibits a governmental entity from imposing on a person, religious institution, or religious assembly a land use regulation that substantially burdens the free exercise of religion unless the governmental entity demonstrates that the imposition of the burden is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest (42 USC 2000cc).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION.
    Equal protection of the law, as guaranteed by the United States Constitution and the Michigan Constitution, mandates that persons in similar circumstances be treated similarly (US Const, Am XIV, § 1; Const 1963, art 1, § 2).

3. CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS — LAND USE REGULATIONS.
    A land use regulation may effectuate a taking of private property for public use when the regulation does not substantially advance a legitimate state interest or denies an owner an economically viable use of his land (US Const, Am V; Const 1963, art 10, § 2).

4. SUPERINTENDING CONTROL — LEGAL REMEDIES.
    Superintending control is an extraordinary power that a court may invoke only when the plaintiff has no legal remedy and demonstrates that a lower court or tribunal has failed to perform a clear legal duty.

*Robert L. Bunting* and *Robert Charles Davis* for the plaintiff.

*Bodman, Longley & Dahling LLP* (by *James J. Walsh, Sandra L. Sorini,* and *William B. Forrest III*) for the defendants.

Before: MURPHY, P.J., and OWENS and SCHUETTE, JJ.

SCHUETTE, J. Plaintiff appeals as of right an order granting defendants' motion for summary disposition,

denying plaintiff's motion for summary disposition, and denying plaintiff's request for a preliminary injunction. We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

### I. ISSUE SUMMARY

This case involves the protections provided by the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 USC 2000cc, and the fundamental guarantee of equal protection as provided by the United States Constitution. The heart of the issue concerns plaintiff's desire to operate a religious primary school for children, kindergarten through third grade, in an area zoned as an office park and defendants' refusal to permit this type of use. Plaintiff filed suit after township officials determined that plaintiff's intended use of the premises—the operation of a faith-based primary school—was prohibited by the local zoning ordinance.

RLUIPA prohibits a governmental entity from imposing on a person, or on a religious institution or assembly, a land use regulation that substantially burdens the free exercise of religion. RLUIPA also provides protection to individuals in prisons or mental hospitals in their free exercise of religion, which is not at issue in this case.

Under RLUIPA, plaintiff must fulfill two separate tests to receive the protections offered by this statute. First, plaintiff must establish one of three jurisdictional requirements specified in RLUIPA. The trial court held that plaintiff failed to meet any of the jurisdictional requirements and, therefore, the first test of

RLUIPA was not met. We disagree. When the Ann Arbor Charter Township Zoning Board of Appeals examined and subsequently denied plaintiff's petition for a variance, an individualized assessment pursuant to 42 USC 2000cc(a)(2)(C) occurred. Therefore, plaintiff did meet one of the three jurisdictional requirements specified by Congress under RLUIPA.

Second, after meeting the jurisdictional requirements, plaintiff must also satisfy the substantial burden on religious exercise test set forth in RLUIPA. In other words, plaintiff must establish a prima facie case to invoke the statutory protections contained in RLUIPA. Plaintiff and defendants each filed motions for summary disposition on plaintiff's RLUIPA claim. We hold that there are genuine issues of material fact regarding whether plaintiff has established a prima facie case pursuant to RLUIPA. Therefore, while the trial court's denial of plaintiff's motion was correct, the trial court's granting of defendants' motion was premature and in error.

The trial court also granted defendants' motion for summary disposition on plaintiff's claim that defendants' application of the zoning ordinance violated the equal protection guarantee of the United States Constitution. Again, the trial court erred. Genuine issues of material fact remain with respect to this issue, particularly with regard to whether plaintiff and Rainbow Rascals are similarly situated entities. The trial court ruled that plaintiff failed to establish an equal protection claim and, as a result, the burden shifting analysis (i.e., strict scrutiny analysis) required in an equal protection analysis did not occur.

## II. FACTS

This case originated from a zoning dispute in Ann Arbor Charter Township. Plaintiff had a leasehold interest in the Domino's Farms Office Park and operated a Catholic Montessori day care program. In April 2000, plaintiff notified the township of its intention to lease additional property immediately adjacent to its day care facility and to operate a Catholic Montessori school for children grades K-3. Plaintiff anticipated that twenty-five students would be attending this school. Plaintiff hoped to utilize space that had been occupied by the "Rainbow Rascals," (a non-religious, pre-school day care program), which previously had received approval from the defendants to accommodate up to one hundred students.

The property at issue is zoned "OP" (office park district) pursuant to the township zoning ordinance. The township zoning ordinance expressly permitted the operation of day care centers within the OP district, but only for children of office park employees. Plaintiff requested in writing a zoning determination from the township regarding whether plaintiff's proposed use of the property would be allowed under the township's ordinance. In a letter dated May 1, 2000, the zoning official for the township informed plaintiff that the zoning ordinance classified its proposed use as "primary school.", The letter informed plaintiff that primary schools were not listed as permitted uses in OP districts and denied plaintiff's proposed use of the property.

On May 30, 2000, plaintiff filed a petition with the Ann Arbor Charter Township Zoning Board of Appeals (ZBA) appealing the zoning official's decision.

Plaintiff sought the following: (1) a reversal of the zoning official's determination so as to allow the proposed use; (2) a use variance; and (3) a determination that plaintiff's proposed use as a primary school be considered a "substituted use" of the Rainbow Rascals day care program. With respect to plaintiff's second request in the May 30 petition, plaintiff noted that defendants had granted a use variance to Rainbow Rascals on December 3, 1991, which permitted an expanded use of the premises to allow children of non-office park employees to attend the Rainbow Rascals day care program. As mentioned, the original zoning ordinance allowed the operation of a day care facility in an area zoned OP only for use by children of office park employees. With respect to plaintiff's third request in its May 30 petition, plaintiff argued that its primary school should be considered a substitution of the day care program. Plaintiff noted that the proposed use of the property would be low impact and would involve less density than the currently approved use. Plaintiff emphasized that its proposed use would be for twenty-five students.

A hearing on plaintiff's petition was held on June 26, 2000. The ZBA rejected plaintiff's appeal. The ZBA held that plaintiff's proposed use of the property for a primary school could not be considered a substitution of a non-conforming use. The ZBA determined that because Rainbow Rascals had received a variance, its use of the premises became a conforming and permitted use in the OP district. Therefore, plaintiff's use would be non-conforming and a substitution was not permitted. The ZBA then determined that a primary school was not a permitted use in an area zoned OP. Finally, the ZBA denied plaintiff's request for a use

variance because plaintiff failed to make the requisite showing that without the variance, there could be no viable economic use of the property.

On September 22, 2000, plaintiff filed the instant lawsuit. The complaint alleged: violations of RLUIPA; violations of substantive due process, procedural due process, and equal protection; that the township's zoning ordinance was void for vagueness; that plaintiff was entitled to an order of superintending control; a statutory appeal as of right from the decision of the ZBA; and that defendants' actions and zoning ordinance were unreasonable. Subsequently, both parties filed motions for summary disposition. Plaintiff also filed a motion requesting a preliminary injunction.

On January 16, 2001, the trial court granted defendants' motion for summary disposition, denied plaintiff's motions for summary disposition, and denied plaintiff's request for a preliminary injunction. The trial court ruled that plaintiff had not met any of the jurisdictional elements required to invoke the protections of RLUIPA. The court also determined that plaintiff failed to establish a prima facie case under RLUIPA because plaintiff failed to establish that the application of the zoning regulation substantially burdened plaintiff's right of free exercise of religion as required under RLUIPA. The court affirmed the ZBA's decision and determined that no genuine issue of material fact existed with regard to plaintiff's substantive due process, equal protection, procedural due process, and void for vagueness claims. It also denied plaintiff's petition for superintending control and motion for preliminary injunction. Plaintiff appeals as of right.

### III. STANDARD OF REVIEW

On appeal, a trial court's grant or denial of summary disposition will be reviewed de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek, supra* at 337. The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law. *American Community Mutual Ins Co v Comm'r of Ins*, 195 Mich App 351, 362; 491 NW2d 597 (1992).

When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). A motion for summary disposition based on the lack of a material factual dispute must be supported by documentary evidence. MCR 2.116(G)(3)(b); *Meyer v City of Center Line*, 242 Mich App 560, 574; 619 NW2d 182 (2000). When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). All reasonable inferences are to be drawn in favor of the nonmovant. *Hall v McRea Corp*, 238 Mich App 361, 369-370; 605 NW2d 354 (1999).

IV. RELIGIOUS LAND USE AND INSTITUTIONALIZED
PERSONS ACT OF 2000 (RLUIPA)

A. ORIGINS OF RLUIPA: *CITY OF BOERNE v FLORES*[1] AND RFRA

The roots of RLUIPA can be traced to the Religious Freedom Restoration Act (RFRA), a federal law enacted in 1993, and to the United States Supreme Court decision in *City of Boerne v Flores*, 521 US 507; 117 S Ct 2157; 138 L Ed 2d 624 (1997). In *Flores*, the United States Supreme Court ruled that certain provisions of RFRA violated the United States Constitution. Congress responded to the Supreme Court's decision in *Flores* by enacting RLUIPA, which addressed both the admonitions and constitutional concerns expressed by the Supreme Court in the *Flores* decision.[2]

The stated purpose in RLUIPA is to "remedy the well documented discriminatory and abusive treatment suffered by religious individuals and organizations in the land use context." 146 Cong Rec E 1234, 1235 (July 14, 2000). RLUIPA attained this goal by imposing the strict scrutiny standard of review on the government if a claimant demonstrates that the government substantially burdened the claimant's free exercise of religion. 146 Cong Rec S 7774 (July 27, 2000).

In the land use context, Congress made several findings that shed some light on the present matter. Senators Hatch and Kennedy co-sponsored RLUIPA; they stated:

---

[1] *City of Boerne v Flores*, 521 US 507; 117 S Ct 2157; 138 L Ed 2d 624 (1997).

[2] Defendants do not challenge the constitutionality of RLUIPA, and we do not address its constitutionality. However, we note that in the recent case of *Elsinore Christian Center v City of Lake Elsinore*, 270 F Supp 2d 1163 (CD Cal, 2003), the court ruled that RLUIPA was unconstitutional. This decision is not binding on this Court.

> This Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination and unfair delay.
>
> *    *    *
>
> . . . In many cases, real property is used by religious institutions for purposes that are comparable to those carried out by other institutions. While recognizing these facilities may be owned, sponsored or operated by a religious institution, or may permit a religious institution to obtain additional funds to further its religious activities, this alone does not automatically bring these activities or facilities within the bill's definition or [sic] religious exercise. [146 Cong Rec S 7774, 7776 (July 27, 2000).]

The legislative history of RLUIPA states that it "is only the use, building, or conversion for religious purposes that is protected, and not other uses or portions of the same property." 146 Cong Rec E 1563, 1564 (September 22, 2000). For example:

> [I]f a commercial enterprise builds a chapel in one wing of the building, the chapel is protected if the owner is sincere about its religious purposes, but the commercial enterprise is not protected. Similarly, if religious services are conducted once a week in a building otherwise devoted to secular commerce, the religious services may be protected but the secular commerce is not. [Id.]

### B. RLUIPA'S JURISDICTIONAL ELEMENTS

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition and dismissing plaintiff's claim under RLUIPA. In order to establish a claim under RLUIPA, a party must establish

that at least one of these three jurisdictional elements exists:

> (A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;
>
> (B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or
>
> (C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved. [42 USC 2000cc(a)(2).]

Plaintiff asserts that it has met two of the three jurisdictional requirements: interstate commerce pursuant to 42 USC 2000cc(a)(2)(B) and an individualized assessment of plaintiff's proposed use of the property pursuant to 42 USC 2000cc(a)(2)(C). We agree that defendants made an individualized assessment of plaintiff's proposed use of the property.

Defendants' conduct constituted an individualized assessment when the ZBA: (1) affirmed the zoning administrator's decision that a primary school was not a permitted use in the OP district; (2) denied plaintiff's application for a use variance; and (3) denied plaintiff's request for a substituted, nonconforming use.

Here, the language of the zoning ordinance invites individualized assessments of the subject property and the use of such property, and contains mechanisms for individualized exceptions:

> The Board of Appeals shall have the power and duty to authorize in specific cases a relaxation of the provisions of this Ordinance through a variance as will not be contrary to public interest where, owing to special conditions, a literal enforcement of the provisions of this Ordinance would result in unnecessary hardship or practical difficulty. [Section 130.2411(A).]

The plain language of this ordinance allows for a "relaxation" of the provisions in certain cases. For example, a relaxation of the ordinance was granted to the previous tenant of the land in question, Rainbow Rascals. Although the provisions of the zoning ordinance allow for day care centers in an area zoned OP, those day care centers are specifically required by the ordinance to be designated for use only by the employees of the office park. Rainbow Rascals applied for, and received, a variance allowing children of non-office park employees to attend the non-religious day care program. Yet, the defendants refused to "relax" the ordinance for plaintiff's intended use as a religious school for young children. Defendants' conduct constituted an individualized assessment of the use of property by plaintiff contrary to RLUIPA. 42 USC 2000cc(a)(2)(C). Accordingly, the trial court erred in ruling that plaintiff failed to establish this jurisdictional element. In light of our ruling, we need not address the other two jurisdictional subsections of RLUIPA, 42 USC 2000cc(a)(2)(A), (B).[3]

---

[3] Judge SCHUETTE, in his individual capacity, contends that the second jurisdictional element of RLUIPA, 42 USC 2000cc(a)(2)(B), was indeed met and that the trial court misapplied the ruling in *United States v Lopez*, 514 US 549; 115 S Ct 1624; 131 L Ed 2d 626 (1995). However, given the unanimity of opinion concerning the individualized assessment made by defendants pursuant to 42 USC 2000cc(a)(2)(C), the Court does not need to address the applicability of 42 USC 2000cc(a)(2)(B) to this case.

## C. SUBSTANTIAL BURDEN ON RELIGIOUS EXERCISE TEST

Once the jurisdictional requirements of RLUIPA have been satisfied, plaintiff must establish a "substantial burden on religious exercise." As a general rule, RLUIPA provides:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest. [42 USC 2000cc(a)(1).]

Challenges of zoning ordinances under RLUIPA are expressly contemplated. 42 USC 2000cc-5(5). The use of the land does not have to be a "core religious practice." Rather, "[t]he term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC 2000cc-5(7)(A). Further, RLUIPA explicitly states that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 USC 2000cc-5(7)(B). Here, we believe that plaintiff has sufficiently shown that the contemplated use for the subject property—a faith-based primary school—falls within this broad definition of a religious exercise.

The more difficult question is whether plaintiff introduced sufficient evidence to allow reasonable minds to differ with respect to whether defendants imposed a "substantial burden" on this religious exer-

cise. The substantial burden must be based on a "sincerely held" religious belief. *Werner v McCotter*, 49 F3d 1476, 1479 n 1 (CA 10, 1995) (citing *Wisconsin v Yoder*, 406 US 205, 215-219; 92 S Ct 1526; 32 L Ed 2d 15 [1972]). In *Lyng v Northwest Indian Cemetery Protective Ass'n*, 485 US 439, 450-451; 108 S Ct 1319; 99 L Ed 2d 534 (1988), the Supreme Court indicated that for a governmental regulation to substantially burden religious activity, it must have a tendency to coerce individuals into acting contrary to their religious beliefs. *Id.* at 450-451. Conversely, a government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion. *Id.*; *Thiry v Carlson*, 78 F3d 1491, 1495 (CA 10, 1996). Thus, for a burden on religion to be substantial, the government regulation must compel action or inaction with respect to the sincerely held belief; mere inconvenience to the religious institution or adherent is insufficient. *Werner, supra* at 1480.

The difference between a "substantial burden" on religious exercise and an "inconvenience" on religious exercise has been discussed in federal court cases dealing with RLUIPA. The district courts have concluded that the regulations must have a "chilling effect" on the exercise of religion or substantially burden religious exercise in order to be consistent with the Supreme Court's substantial burden test. For example, in *Cottonwood Christian Ctr v Cypress Redevelopment Agency*, 218 F Supp 2d 1203, 1226-1227 (CD Cal, 2002), the federal district court held that the denial of an application to build a church on its property constituted a substantial burden because "[p]reventing a church from building a worship site

fundamentally inhibits its ability to practice its religion." *Id.* at 1226.

On appeal, plaintiff contends that it did, in fact, establish a prima facie case because it satisfied at least one of the jurisdictional elements and it presented facts demonstrating that defendants had placed a substantial burden on its religious exercise. Prima facie evidence is defined in Black's Law Dictionary (7th ed) as "evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." RLUIPA indicates that a plaintiff will always have the burden of persuasion to prove a substantial burden on religious activity, and, once proven, the government must prove a compelling state interest using the least restrictive means. 42 USC 2000cc-2(b). In *Grace United Methodist Church v City of Cheyenne*, 235 F Supp 2d 1186, 1196 (D Wy, 2002), the federal district court, in a case involving an RLUIPA claim where the plaintiff church was not allowed to operate a religious day care facility, concluded that summary judgment was inappropriate because a genuine issue of material fact existed regarding whether Cheyenne's land use regulations substantially burdened Grace United's exercise of religion. The court stated that genuine issues of material fact existed regarding all the elements of the plaintiff's prima facie case under RLUIPA. *Id.*

In the present case, in order to determine whether plaintiff has, in fact, established a prima facie case, we must look at the documentary evidence presented to the trial court at the summary disposition hearing to determine (a) whether plaintiff submitted sufficient, admissible, and uncontradicted evidence that established, as a matter of law, that there was a substantial burden on religious exercise such that plain-

tiff was entitled to summary disposition, and (b)
whether defendants submitted sufficient, admissible,
and uncontradicted evidence that established, as a
matter of law, that there was not a substantial burden
on religious exercise such that defendants were enti-
tled to summary disposition. That being said, it is nec-
essary to first address the parameters of what is rele-
vant and constitutes a substantial burden on religious
activity.

Viewing the evidence that was submitted in a light
favorable to plaintiff, we first note that there is no
claim by plaintiff that the location at issue has some
religious significance such that plaintiff's faith
requires a school at that particular site. But plaintiff
asserted that it would not be feasible to operate a
Montessori school at another location because of the
burdens of having duplicate administration. In addi-
tion, it can be inferred from the record that moving
both the day care center and the school to a different
location would not be convenient to those parents
who work in the adjacent office park. Thus, even if
there is another location within the township that
could house the proposed school, it is not clear that
the school would necessarily be successful at this
other location. Additionally, of course, if the school
were not successful, then those parents desiring a
religious education in the Montessori tradition for
their children would, instead, be forced to send their
children elsewhere for schooling.

We believe that the determination whether plaintiff
has suffered a substantial burden on religious exer-
cise requires us to focus on numerous factors and
considerations that were not addressed by the par-
ties. Those factors include: whether there are alterna-
tive locations in the area that would allow the school

consistent with the zoning laws; the actual availability of alternative property, either by sale or lease, in the area; the availability of property that would be suitable for a K-3 school; the proximity of the homes of parents who would send their children to the school; and the economic burdens of alternative locations. These types of factors must be taken into consideration in determining whether there has been a substantial burden on religious activity. None of the parties submitted documentary evidence on these factors, and without evidence of these factors we were unable to conclusively determine that plaintiff has established a prima facie case. We conclude that the trial court erred in ruling that there was no material question of fact on the "substantial burden" issue.[4] Consequently, granting summary disposition for defendants was premature.[5]

### V. EQUAL PROTECTION

Plaintiff next argues that the trial court erred in granting defendants' motion for summary disposition on plaintiff's equal protection claim. We agree.

Equal protection of the law is guaranteed by both the federal and state constitutions. US Const, Am XIV,

---

[4] Judge SCHUETTE, in his individual capacity, is particularly troubled by what he believes to be defendants' selective application of the zoning ordinance. He notes that the actions of the ZBA have effectively shut the schoolhouse door on plaintiff's desire to provide religious instruction to young children. He points out that the zoning board opened the door for Rainbow Rascals, a nonreligious entity, by granting a variance, yet denied plaintiff's request for a variance. In his view, the selective application of the ordinance has had a chilling effect on the free exercise and expression of plaintiff's faith.

[5] Having concluded that plaintiff's evidence was sufficient to render summary disposition premature, we reject plaintiff's contention that the trial court erred in denying its motion for summary disposition.

§ 1; Const 1963, art 1, § 2; *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 716; 575 NW2d 68 (1997). These constitutional provisions are coextensive. *Id.* The doctrine mandates that persons in similar circumstances be treated similarly; furthermore, "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Yoder, supra* at 220.

The United States Supreme Court has established the following standards for determining the validity of state legislation such as zoning ordinances under the Equal Protection Clause: "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect classifications such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classifications challenged be rationally related to a legitimate state interest." *City of New Orleans v Dukes*, 427 US 297, 303; 96 S Ct 2513; 49 L Ed 2d 511 (1976).

If the legislative classification negatively affects such a suspect class, then courts may uphold the classification only if it is precisely tailored to serve a compelling governmental interest. *Plyler v Doe*, 457 US 202, 216 n 14; 102 S Ct 2382; 72 L Ed 2d 786 (1982). Absent an invidious or gender-based classification, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Texas v Cleburne Living Center, Inc*, 473 US 432, 440; 105 S Ct 3249; 87 L Ed 2d 313 (1985). However, courts apply a strict scrutiny test in evaluating equal protection issues where a statute encroaches on a funda-

mental right, such as the right to free exercise of religion, as in the present case. *Sherbert v Verner*, 374 US 398, 407; 83 S Ct 1790; 10 L Ed 2d 965 (1963).

Under the strict scrutiny standard, the state must show that the statutory scheme in question was necessary to promote "a *compelling* state interest." *Shapiro v Thompson*, 394 US 618, 638; 89 S Ct 1322; 22 L Ed 2d 600 (1969) (emphasis in original). In addition, if the legislation affects fundamental rights, the Court has required the state to have chosen the least restrictive means of achieving the governmental objective. *Dunn v Blumstein*, 405 US 330, 343; 92 S Ct 995; 31 L Ed 2d 274 (1972).

In *Mount Elliott Cemetery Ass'n v City of Troy*, 171 F3d 398, 407 (CA 6, 1999), a zoning case involving an equal protection issue, the court upheld a grant of summary disposition for the defendant municipality because the plaintiff could not show that it was treated differently than others who were similarly situated and that the selective treatment was based on the impermissible consideration of the plaintiff's religion.

On the other hand, in *Vineyard Christian Fellowship of Evanston, Inc v City of Evanston*, 250 F Supp 2d 961, 976 (ND Ill, 2003), the court determined that the city of Evanston's claim that it had zoned purely for land use purposes, and not based on religion, was not supported by the facts. The court noted that it was persuaded to this viewpoint by the plaintiff's argument that the zoning ordinance would permit Vineyard's congregants to put on a production of the musical play "Fiddler on the Roof," which includes a scene depicting a traditional Jewish wedding at the property in question, but would not permit an actual religious wedding on that same property. *Id.*

at 976. Similarly, in this case, Rainbow Rascals, a secular day care provider, received a variance that allowed it to accommodate children of non-office park employees. Nevertheless, defendants denied plaintiff's request to use the same property to accommodate the faith-based education of young children.

Here, the trial court required plaintiff to show that the selective treatment was based on an impermissible consideration such as religion. The trial court ruled that plaintiff failed to show evidence that the variance request was denied as a result of intentional discrimination and the trial court granted summary disposition to defendants. Plaintiff introduced evidence that during the hearing the ZBA focused on plaintiff's religious affiliation:

Laporte [a ZBA member] asked if the petitioner believed that she has some additional right to the relief that she would not have as a non-sectarian private school without a religious affiliation based on the Constitution.

Davis [an attorney for plaintiff] responded that he believes that the petitioner has rights afforded under the Constitution which do favor as a use education and religion. [June 28, 2000, ZBA meeting minutes.]

The trial court also noted that plaintiff failed to allege or prove that it was treated differently than a similarly situated person or entity. However, plaintiff did argue that it was treated differently from the Rainbow Rascals day care center in that plaintiff wanted to use the property to educate only twenty-five children, whereas Rainbow Rascals was permitted to use the premises for up to one hundred children. Although plaintiff wishes to operate a primary school, which is not listed under permitted uses or

permitted accessory uses in the ordinance, the zoning ordinance also provides under § 130.2411(A):

> The Board of Appeals shall have the power and duty to authorize in specific cases a relaxation of the provisions of this Ordinance through a variance as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of this Ordinance would result in unnecessary hardship or practical difficulty.

Although a primary school for children up to the third grade (for use by employees of the office park) is not exactly the same as a day care facility, it is similar. The zoning ordinance does allow for a variance. Plaintiff also notes that Rainbow Rascals was granted a variance to allow children of non-office park employees to attend. Therefore, plaintiff and Rainbow Rascals could be considered similarly situated in that they both wish to operate facilities for young children, and both seek (or sought) variances (Rainbow Rascals from the requirement that the children's parents work in the office park and plaintiff on the age of the children being educated in the property).

At the very least, we are not persuaded that plaintiff's request for a variance required any more of a deviation from the zoning ordinance than the variance granted to Rainbow Rascals. Given that Rainbow Rascals was a secular day care center, whereas plaintiff's proposed use involved religious education, reasonable minds could differ with regard to whether plaintiff and Rainbow Rascals were similarly situated. Therefore, the trial court erred in granting defendants' motion for summary disposition on plaintiff's equal protection claim because genuine issues of material fact remain.

VI. APPEAL FROM THE ZBA DECISION

Plaintiff next argues that the trial court improperly considered defendants' motion for summary disposition as it related to plaintiff's claim of appeal from the ZBA decision. We disagree. However, plaintiff goes on to argue that even if the trial court were permitted to rule on this appeal, this court should reverse the decision because the ZBA acted contrary to law by violating RLUIPA. On the basis of our analysis of plaintiff's RLUIPA claim, we agree that summary disposition on this claim was premature.

With regard to plaintiff's appeal of the ZBA's decision, the trial court stated in a footnote of its opinion and order:

> It should be noted that a claim of appeal from a ZBA decision is not properly decided using the standards for a motion for summary disposition. See *Carleton Sportsman's Club v Exeter Twp*, 217 Mich App 195, 201-02 [550 NW2d 867] (1996) (the trial court erred when it decided the case on the parties' motions for summary disposition, using the standards for summary disposition under MCR 2.116(C)(8) and 2.116 (C)(10), rather than deciding whether the decision was supported by competent, material and substantive evidence on the record and authorized by law.) The parties here, however, have addressed the correct standard for deciding an appeal, and the Court therefore has construed their arguments as arguments on appeal rather than on summary disposition.

The court concluded:

> In conclusion, this Court affirms the decision of the ZBA and finds that it was legally correct and based on competent, material, substantial evidence on the record.

Plaintiff correctly argues that summary disposition is not an appropriate remedy when a trial court acts

as an appellate court. However, here, the trial court clearly stated that it construed the arguments on this issue as arguments on appeal rather than on summary disposition. Plaintiff argues that the language of this footnote is disingenuous, yet there is nothing in the record to suggest that this assertion has merit. The trial court used the proper standard when reviewing plaintiff's appeal of the ZBA's decision.

Plaintiff next argues that, if the trial court did have the authority to rule on this appeal, the decision should be reversed. In *Reenders v Parker*, 217 Mich App 373, 378; 551 NW2d 474 (1996), this Court stated:

> The decision of a zoning board should be affirmed by the courts unless it is (1) contrary to law, (2) based on improper procedure, (3) not supported by competent, material, and substantial evidence on the record, or (4) an abuse of discretion.

The trial court erred in granting defendants' motion for summary disposition with regard to plaintiff's RLUIPA and equal protection claims. As a result, the trial court's decision of the appeal from the ZBA decision was premature. Depending upon the ultimate resolution of the other claims, it is possible that the ZBA's decision is contrary to law and should be reversed. Therefore, we remand this issue for a resolution consistent with the ultimate determination of the other issues.

### VII. SUBSTANTIVE DUE PROCESS

Plaintiff next argues that the trial court erred when it determined that plaintiff had failed to state a claim of violation of substantive due process. We disagree.

Both the state and federal constitutions prohibit the taking of private property for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2; *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 23; 614 NW2d 634 (2000). A land use regulation may effectuate a taking when the regulation (1) does not substantially advance a legitimate state interest or (2) denies an owner economically viable use of his land. *K & K Construction, Inc v Dep't of Natural Resources*, 456 Mich 570, 576; 575 NW2d 531 (1998). To establish that a regulation does not substantially advance a legitimate state interest, and thus violates a landowner's substantive due process rights, the landowner must prove "(1) that there is no reasonable governmental interest being advanced by the present zoning classification or (2) that an ordinance is unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question." *Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441 (1998).

Three rules of judicial review apply: " '(1) the ordinance is presumed valid; (2) the challenger has the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property; that the provision in question is an arbitrary fiat, a whimsical *ipse dixit*; and that there is not room for a legitimate difference of opinion concerning its reasonableness; and (3) the reviewing court gives considerable weight to the findings of the trial judge.' " *Id.*, quoting *A & B Enterprises v Madison Twp*, 197 Mich App 160, 162; 494 NW2d 761 (1992).

Plaintiff does not use the above-mentioned framework in its analysis of its substantive due process argument. Instead, plaintiff asserts that the zoning

ordinance at hand is invalid because it does not bear a real and substantial relationship to public health, safety, and welfare. Plaintiff further argues that the Michigan Constitution states that education and religion are to be favored and promoted,[6] and that by preventing plaintiff's proposed use of this space, defendants are interfering with this mandate and are acting contrary to law.

Although not articulated clearly, it appears that plaintiff is arguing that the township's ordinance is unlawful because it does not allow schools in OP districts. We find that the exclusion of schools from OP districts under the Ann Arbor Charter Township Zoning Ordinance is reasonable and serves a legitimate governmental interest connected to the public's health, safety, and welfare. Presuming the ordinance to be valid, plaintiff has failed to satisfy its burden to prove otherwise. The trial court did not err in summarily dismissing plaintiff's substantive due process claim.

### VIII. VAGUENESS

Plaintiff argues that defendants' ordinance is void for vagueness because it allows for arbitrary enforcement. We disagree. All statutes and ordinances are given a strong presumption of constitutionality. *Taylor Commons v City of Taylor*, 249 Mich App 619, 625; 644 NW2d 773 (2002). Accordingly, " 'courts have

---

[6] "Michigan has an equally deep rooted commitment to education." *People v DeJonge (After Remand)*, 442 Mich 266, 288; 501 NW2d 127 (1993). " 'Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall be forever encouraged.' " *Id.* at 288-289, quoting Const 1963, art 8, § 1 (noting that Article 8, § 1 of our constitution parallels the language of the Northwest Ordinance of 1787).

a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent.' " *Wysocki v Felt*, 248 Mich App 346, 355; 639 NW2d 572 (2001), quoting *Mahaffey v Attorney General*, 222 Mich App 325, 344; 564 NW2d 104 (1997). As this Court held in *Wysocki, supra* at 356, " '[t]he court will not go out of its way to test the operation of a law under every conceivable set of circumstances. The court can only determine the validity of an act in the light of the facts before it. Constitutional questions are not to be dealt with in the abstract.' " *Id.*, quoting *General Motors Corp v Attorney General*, 294 Mich 558, 568; 293 NW 751 (1940). These same rules govern the review of the constitutionality of an ordinance, *Plymouth Twp v Hancock*, 236 Mich App 197, 199; 600 NW2d 380 (1999), and it is the burden of the party challenging the validity of the ordinance (here plaintiff) to establish that the ordinance is clearly unconstitutional. *Gora v City of Ferndale*, 456 Mich 704, 711-712; 576 NW2d 141 (1998).

In *Dep't of State v Michigan Ed Ass'n—NEA*, 251 Mich App 110, 116; 650 NW2d 120 (2002), this Court set forth the three ways in which to challenge an ordinance on the basis that it is unconstitutionally vague:

"A statute may qualify as void for vagueness if (1) it is overbroad and impinges on First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated." [*Id.*, quoting *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 467; 639 NW2d 332 (2001).]

This Court also pointed out that in determining "whether a statute is void for vagueness, a court

should examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v Piper*, 223 Mich App 642, 646; 567 NW2d 483 (1997); see also *In re Forfeiture of 791 N Main*, 175 Mich App 107, 111; 437 NW2d 332 (1989). In line with this principle, it is critical for courts to remember that, when considering whether an ordinance is void for vagueness, we do "not set aside common sense, nor is the [township board] required to define every concept in minute detail. Rather, the statutory language need only be reasonably precise." *Dep't of State, supra* at 120.

In the present case, plaintiff has failed to set forth facts to support that this ordinance is (1) overbroad and impinges on First Amendment freedoms, (2) does not provide fair notice of the conduct it regulates, or (3) gives the trier of fact unstructured and unlimited discretion in determining whether the statute has been violated. Instead, plaintiff's argument on this issue is minimal. Plaintiff asserts that the township's ordinance is void because it allows arbitrary enforcement. The basis for plaintiff's arbitrariness argument is that plaintiff seeks to use the premises in a less intensive manner than that allowed for day care centers, i.e., twenty-five children in a primary school as opposed to approval for up to one hundred children in a day care center. According to plaintiff, this inconsistency evidences the arbitrariness in which the township's ordinance is being enforced.

Plaintiff fails to reference any particular ordinance language, nor does plaintiff explain or cite law with respect to the particular deprivation under due process and the tie-in with the void-for-vagueness doctrine. We assume that plaintiff is asserting that it is being deprived of a "property" interest by an ordi-

nance that permits unfettered discretion. We note that typically, a void-for-vagueness argument is raised in a challenge to a penal statute or ordinance that proscribes certain behavior for which there is a penalty such as jail time or fines. See *Grayned v City of Rockford*, 408 US 104; 92 S Ct 2294; 33 L Ed 2d 222 (1972); *People v Morey*, 230 Mich App 152; 583 NW2d 907 (1998) (the only two cases cited by plaintiff); see also *People v Lynn*, 229 Mich App 116; 580 NW2d 472 (1998). This is not to say that deprivation of a property interest cannot form the basis of a void-for-vagueness argument, but plaintiff simply fails to elaborate or explain its theory in any meaningful manner. As our Supreme Court stated in *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959):

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow."

Additionally, even if we look at plaintiff's argument substantively, the argument lacks merit. In regard to OP districts, the Ann Arbor Charter Township Zoning Ordinance clearly and unambiguously indicates that day care facilities are a permitted accessory use; there is nothing vague about the language. Further, § 130.1006 makes absolutely no reference to a school of any kind being a permitted use. Therefore, assuming that plaintiff has a property interest in using the premises as a school, that interest was not deprived

through the implementation of a vague ordinance providing unfettered and arbitrary discretion. Rather, the ordinance is not vague and provides clear guidelines on permitted uses.

Plaintiff's argument stems more from the variance request seeking to expand day care operations beyond the children of people who worked in the office park, and the township's approval of the variance, which allowed for up to one hundred children at the day care facility. A review of ordinance § 130.2411 with respect to variances fails to reveal any language that would give the ZBA unfettered and arbitrary discretion in granting variances. Indeed, the standards for approval of a variance request are well-defined in § 130.2411. Plaintiff's argument is not a complaint that the ordinance is vague, but, rather, reflects a disagreement with the exclusion under § 130.1006 of schools from an OP district, and a disagreement with how the township exercised its discretion when granting the variance expanding the use of the day care facility. This is simply not a basis to find the ordinance void for vagueness, and the trial court did not err in dismissing the claim.

## IX. PROCEDURAL DUE PROCESS

Plaintiff next argues that defendant township's ordinance violates the Due Process Clause of the Fourteenth Amendment. We disagree. The full extent of plaintiff's procedural due process argument is that the township's zoning ordinance is void for vagueness, thereby violating the Due Process Clause of the Fourteenth Amendment. We rejected plaintiff's void-for-vagueness argument above; therefore, it is similarly rejected here, and there is no basis to address the

issue any differently in the context of a procedural due process argument. Moreover, we note that the void-for-vagueness doctrine, although arising out of the Due Process Clause, does not relate specifically to procedural due process, but rather relates to substantive due process. In *Dep't of State, supra* at 116, this Court stated:

> To determine whether a statute is void for vagueness, a court should examine the entire text of the statute and give words of the statute their ordinary meanings. Substantive due process requires standards in a statute to be "reasonably precise" in order to ensure that individuals are not held responsible by the state for conduct that they could not reasonably understand to be proscribed. [Citations omitted.]

Plaintiff's procedural due process argument, therefore, fails on multiple levels, and the trial court's ruling dismissing the claim is affirmed.

### X. SUPERINTENDING CONTROL

Plaintiff next argues that the trial court erred in denying the petition for superintending control. We disagree. The grant or denial of a petition for superintending control is within the sound discretion of the court; absent an abuse of discretion, the Court of Appeals will not disturb the denial of such a request. MCR 3.302.

The writ of superintending control supersedes the writs of certiorari, mandamus, and prohibition, and provides one simplified procedure for reviewing or supervising a lower court or tribunal's actions. MCR 3.302(C). The filing of a complaint for superintending control is not an appeal, but, rather, is an original civil action designed to order a lower court to per-

form a legal duty. *Barham v Workers' Compensation Appeal Bd*, 184 Mich App 121, 127; 457 NW2d 349 (1990). Superintending control is an extraordinary power that the court may invoke only when the plaintiff has no legal remedy and demonstrates that the court has failed to perform a clear legal duty. *In re Recorder's Court Bar Ass'n v Wayne Circuit Court*, 443 Mich 110, 134; 503 NW2d 885 (1993); *Czuprynski v Bay Circuit Judge*, 166 Mich App 118, 121-122; 420 NW2d 141 (1988). Therefore, if a plaintiff has a legal remedy by way of appeal, the court may not exercise superintending control and must dismiss the complaint. *Barham*, *supra* at 127; MCR 3.302(D).

Here, the trial court did not abuse its discretion in denying the petition because plaintiff did not establish grounds for issuing the order. See *In re Rupert*, 205 Mich App 474, 478; 517 NW2d 794 (1994). The trial court properly declined to issue an order of superintending control because plaintiff had an adequate legal remedy. *Barham*, *supra* at 127; MCR 3.302(D).

### XI. PRELIMINARY INJUNCTION

Plaintiff argues that the trial court erred in denying plaintiff's motion for a preliminary injunction. The trial court's opinion and order merely noted, at the end of the opinion, that the motion for a preliminary injunction was denied. The trial court, having extensively reviewed and analyzed plaintiff's statutory and constitutional arguments, had no need to substantively address the injunction issue because all alleged causes of action were dismissed. There is no substantive decision or analysis by the trial court for us to review on the matter of plaintiff's request for a pre-

liminary injunction. We, therefore, choose not to address this issue on appeal. Because plaintiff's claims under RLUIPA and equal protection were improperly dismissed and now survive, plaintiff is free to renew its motion for a preliminary injunction for the trial court to consider anew under the legal principles governing preliminary injunctions.

### XII. CONCLUSION

We reverse the trial court's grant of defendants' motion of summary disposition of plaintiff's claim under RLUIPA and rule that plaintiff did establish a jurisdictional requirement of RLUIPA, namely an individualized assessment 42 USC 2000cc(a)(2)(C). Further, we determine that there remain genuine issues of material fact on the issue of substantial burden on religious exercise and remand this case for further proceedings consistent with this opinion of this issue.

We reverse the trial court's grant of defendants' motion for summary disposition of plaintiff's equal protection claim and remand for further proceedings consistent with this opinion.

We remand to the trial court the issue of the appeal from the ZBA for a resolution consistent with this opinion and consistent with the ultimate decision on the other issues presented in this case.

We affirm the trial court's grant of defendants' motion for summary disposition on plaintiff's claims of substantive due process, vagueness, procedural due process, and superintending control.

In light of our ruling, plaintiff is free to renew its motion for preliminary injunction on remand should it desire to do so.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

Owens, J., concurred.

Murphy, P.J., I concur in the result only.