STATE OF VERMONT

SUPERIOR COURT                                     ENVIRONMENTAL DIVISION

}
}
In re Downing Act 250 Application     }                    Docket No. 225-11-09 Vtec
}
}

Decision and Order on Cross-Motions for Partial Summary Judgment

Appellant-Applicants, Richard and Joan Downing appealed from the District 7 Environmental Commission's denial of Act 250 permit amendment #7C0600-10-1, involving the placement and illumination of a twenty-four-foot-high cross on their property in Lyndonville, Vermont.[1]  Appellant-Applicants are represented by L. Brooke Dingledine, Esq.  The Land Use Panel of the Vermont Natural Resources Board, represented by Melanie Kehne, Esq., and the State of Vermont, represented by Assistant Attorney General Robert F. McDougall, Esq., entered separate appearances in this matter, but will be referred to collectively in this decision as "the State."  Interested parties David A. Gascon, John Irwin, and Barbara Irwin have entered appearances representing themselves, but have not taken an active role on the present motions.

The motions for summary judgment involve Questions 2, 3, 4, and 5 of the five-question Statement of Questions: whether the application of Act 250 to the cross violates the Free Speech, Free Exercise, or Establishment Clauses of the First Amendment to the U.S. Constitution; violates the federal Religious Freedom Restoration Act; violates the federal Religious Land Use and Institutionalized

---

[1]  A related appeal, involving the Downings' municipal conditional use application for the same project, Docket No. 139-7-09, has been placed on inactive status pending the outcome of the Act 250 case.

1

Persons Act of 2000 (RLUIPA); or violates the establishment of religion, free exercise of religion, or free speech provisions of the Vermont Constitution.[2] The following facts are undisputed unless otherwise noted.

Appellant-Applicants own more than 800 acres of land off Darling Hill Road in Lyndonville, Vermont. They and some of their adult children reside on portions of the property, and also operate the Meadow View Farm, the Wildflower Inn, and the Steppingstone Spa and Wellness Center on the property. Appellant-Applicants themselves reside at their Lyndonville property during approximately nine months of each year.

The property is subject to Act 250 Land Use Permit #7C0600 and its various amendments over the years since it was originally issued for the construction of the Wildflower Inn in April 1985.[3] The Wildflower Inn is a 24-room bed-and-breakfast

---

[2] Questions 2 through 5 are stated in terms of whether Act 250 <u>as applied</u> to the proposed project violates the listed constitutional or statutory provisions. However, this Court is required to consider the permit amendment application <u>de novo</u>, applying the substantive standards that were applicable before the District Commission. 10 V.S.A. § 8504(h). As the Court has not yet addressed the merits of the application, it is in some sense premature to consider on summary judgment whether "the application of Act 250 to the proposed project" violates any of the cited constitutional or statutory sections. To the extent possible at this stage of the proceedings, this decision will address any issues of the constitutionality of Act 250 on its face, and whether the cited statutes or constitutional provisions limit the Court's consideration of the application, or limit any conditions that could be imposed on it, if approved.

[3] Amendments to the permit include the construction of 2 single family homes with a shared driveway and garage (7C0600-6), the conversion of a barn into a theater (7C0600-5), the renovation of a barn into short-term rental units (7C0600-8), the conversion of a farm house for bed-and-breakfast use (7C0600-9), the construction of a heated 4,500-square-foot pavilion for group functions (7C0600-11), a seven-lot subdivision of land and construction of new single-family homes on four of the lots (7C0600-12), changes to the sewer plan (7C0600-3), and the expansion of a

in which Appellant-Applicants are business partners and which is operated by their daughter, her husband, and their family; the Wildflower Inn's restaurant also serves lunch and dinner.

On June 8, 2005, Appellant-Applicants received approval from the District 7 Environmental Commission for Act 250 Permit #7C0600-10 (the Chapel Permit), allowing a 34-foot-by-50-foot private stone chapel, 39 feet in height, with an attached 28-foot-by-23-foot entry vestibule, to be constructed on a hill on their property. The chapel is oriented roughly parallel to Darling Hill Road, with its entry vestibule located on the southerly end of the building and its altar located on the northerly of the building. The Chapel Permit included conditions specifying that no significant changes to the design or use of the project could be made without written approval of the District Coordinator or the District 7 Environmental Commission, and that all exterior lighting was to be shielded so that the light sources would be concealed from view beyond the perimeter of the project.

Appellant-Applicants completed construction of the chapel during the summer of 2007. They also installed an outdoor path, representing the Stations of the Cross, in an arc around the northerly end of the chapel building.

On November 28, 2007, Appellant-Applicants erected a 24-foot-tall, 9-foot-wide cross, which they had acquired from a previous owner in New Hampshire, outside the northerly end of the chapel building, inside the arc of the Stations of the Cross and visible through the window behind the altar. The cross is oriented slightly to the northwest compared to the orientation of the chapel itself. The cross is constructed from a steel I-beam painted light blue on its sides. It is faced with translucent white plastic panels on the front and back. The front of the cross, facing northerly and away from the chapel building, is internally illuminated by eight four-

maintenance garage and addition of parking(7C0600-7).

3

foot-long, 32-watt fluorescent bulbs. The cross is internally shielded so that, when the cross is illuminated, light only issues from the face of the cross facing northerly across the valley away from the chapel building. The opposite, non-illuminated face of the cross is visible from inside the chapel through the central window behind the altar.

Appellant-Applicants did not initially apply for an amendment to their Act 250 permit for the cross. They did apply in 2007 for municipal zoning (conditional use) approval of the cross and to keep it illuminated from dusk until dawn 365 days per year. The initial municipal decision on this application required them to reduce the size of the cross and to keep it unlit; a subsequent 2008 application to keep the cross at its existing size but to leave it unlit was granted.

On June 8, 2009, Appellant-Applicants filed an application to amend the Act 250 Chapel Permit (#7C0600-10) to allow the placement and the illumination of the already-installed cross.[4] They propose to illuminate the cross from dusk to dawn during the following specific periods totaling approximately twelve to thirteen weeks per year: from Ash Wednesday through Easter Sunday, during a week in early September (commemorating the birth of Mary), and from Advent Sunday

_____

[4] In May 2009, Appellant-Applicants also had again applied for municipal approval of an illumination schedule for the cross to illuminate the cross from dusk until dawn during approximately 174 days per year: from Ash Wednesday (the beginning of Lent) through Pentecost Sunday (fifty days after Easter), during a week in early September (commemorating the birth of Mary), during the month of October (dedicated to Mary the Blessed Mother), and from the first Sunday in Advent (four Sundays before Christmas) through Epiphany (January 6). During the municipal hearings they offered in the alternative to illuminate the cross during the dates requested in the Act 250 application, or to illuminate the cross until 11 p.m. on 365 days per year. The municipal grant of conditional use approval allowed the cross to be illuminated from dusk until dawn only from the first Sunday in Advent through Epiphany; the Downings' appeal of that decision is the subject of Docket No. 139-7-09 Vtec (see footnote 1, above).

4

(four Sundays before Christmas) through Epiphany (January 6). The District 7 Environmental Commission's denial of that application is the subject of the present appeal, Docket No. 227-11-09 Vtec.

Appellant-Applicants describe themselves as life-long Roman Catholics. While at their home in Lyndonville, they visit the chapel daily for prayer and meditation.[5] They express their faith "through prayer, both formal and informal, Mass, meditations on the Rosary, Stations of the Cross [and] other Catholic exercises." Applicants' Ex. 1 at 2. Applicants claim that the location, orientation, size, dimensions, and illumination of the cross[6] are all part of the expression of their Catholic faith.

## Question 3 of the Statement of Questions: Religious Freedom Restoration Act

In City of Boerne v. Flores, 521 U.S. 507, 532–36 (1997), the U.S. Supreme Court declared that the Religious Freedom Restoration Act exceeded the power of Congress to enforce the Fourteenth Amendment. The Court invalidated the application of the Religious Freedom Restoration Act to state laws, such as Act 250, that do not specifically address religion. Applicants therefore have no claim under

---

[5] They estimate that, as of May 21, 2010, they had been to the chapel on approximately 600 days since its construction.

[6] Appellant-Applicants have provided some explanatory information about the size and orientation of the cross, which is known as a "Cross of Love of Dozulé." It is constructed at 1/100 scale of a cross reportedly seen in a vision in the 1970s in the town of Dozulé, France, known as the "Glorious Cross of Dozulé." Appellant-Applicants have not, however, presented any information regarding whether it is the proportions of the cross, or the particular 24' x 9' size, that may be important to their religious practices; whether its illumination during particular hours, dates, or seasons of the year may be important to their religious practices; or the extent to which any aspect of its location, orientation, size, proportions, or illumination may be essential or important to their religious practices.

the Religious Freedom Restoration Act to invalidate Act 250, either on its face or as applied. Summary judgment therefore is GRANTED to the State as to Question 3 of the Statement of Questions.

Questions 2 and 5 of the Statement of Questions: Establishment Clause

To keep from running afoul of the Establishment Clause of the First Amendment to the U.S. Constitution, a statute must have a secular legislative purpose; may not, as its primary effect, either advance or inhibit religion; and must avoid excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971); see also Chittenden v. Waterbury Center Community Church, Inc., 168 Vt. 478, 486 (1998).

Act 250's purpose "is to protect and conserve the lands and environment of the state." In re: Spring Brook Farm Foundation, Inc., 164 Vt. 282, 287 (1995) (quoting 1969, No. 250 (Adj. Sess.), § 1). Because "Act 250 speaks to land use and not to the particular institutional activity associated with that land use," it neither advances nor inhibits any particular religion, and does not entangle itself with any religion. In re: Baptist Fellowship of Randolph, Inc., 144 Vt. 636, 639 (1984). Accordingly, Act 250 does not violate the federal Establishment Clause on its face.

Similarly, Question 5 of the Statement of Questions asks whether the application of Act 250 "interferes with the Applicants' establishment of religion . . . under the Vermont Constitution." While the Vermont Constitution lacks the U.S. Constitution's Establishment Clause, it has a similar provision known as the Compelled Support Clause, ch. I, art. 3, which protects an individual from being "compelled to attend or support religious worship against that person's conscience." Chittenden Town School District v. Department of Education, 169 Vt. 310, 320 (1999). Act 250 is a statewide land use regulation statute; it does not require a person to support any religious group or institution, or compel a person to attend

6

any form of religious worship. As such, Act 250 does not violate the Compelled Support Clause of the Vermont Constitution.

Accordingly, summary judgment is granted to the State with respect to Questions 2 and 5 as they pertain to the Establishment Clause of the First Amendment to the U.S. Constitution and the Compelled Support Clause of the Vermont Constitution.

Questions 2 and 5 of the Statement of Questions: Free Exercise of Religion

The Free Exercise Clause of the First Amendment to the U.S. Constitution "guarantees the freedom to hold religious beliefs and the freedom to act in accordance with those beliefs," although that freedom may be limited by regulation for the protection of society. Turner v. Roman Catholic Diocese of Burlington, 2009 VT 101, ¶ 27, 186 Vt. 396 (2009) (citing Cantwell v. Connecticut, 310 U.S. 296, 303–04 (1940)). Neutral laws of general applicability do not violate the Free Exercise Clause, but a law that is not neutrally applied is subject to strict scrutiny. Turner, 2009 VT 101 at ¶ 27; Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993).

In the present case, Appellant-Applicants argue that the District 7 Environmental Commission applied Act 250 to the application in a "baseless and discriminatory manner." However, because this Court is considering Appellant-Applicants' Act 250 amendment application de novo, applying the substantive standards that were applicable before the District Commission, the only issue before the Court is whether Act 250 violates the Free Exercise Clause on its face. Because Act 250 is a neutral statute of general applicability, it does not violate the Free Exercise Clause on its face.

In their opposition to the State's motion for summary judgment, Appellant-Applicants also argue that Act 250 warrants strict scrutiny because it infringes on

7

both their free exercise of religion and their freedom of speech. Such a "hybrid" constitutional claim, if one is available at all, subjects the regulation in question to strict scrutiny if <u>both</u> the Free Exercise Clause <u>and</u> either the Establishment Clause or a party's free speech rights are implicated. See <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024, 1031 (9th Cir. 2004); but see <u>Leebaert v. Harrington</u>, 332 F.3d 134, 143–44 (2nd Cir. 2003) (characterizing the Supreme Court's discussion of hybrid claims in <u>Employment Division, Department of Human Resources of Oregon v. Smith</u>, 494 U.S. 872, 881–82 (1990) as dicta). In the present case, because Appellant-Applicants' Free Exercise Clause claim is resolved in favor of the State, a hybrid claim is not available to them.

Similarly, Act 250 does not on its face interfere with Appellant-Applicants' right to the free exercise of religion under Chapter I, Article 3 of the Vermont Constitution. The state Constitution does not offer any more protection to the free exercise of religion than does the federal Constitution. See <u>State v. DeLaBruere</u>, 154 Vt. 237, 265 (1990) (holding that the Chapter I, Article 3 of the Vermont Constitution did not offer any additional protection, based on defendants' religious beliefs, to exempt defendants from being prosecuted for their child's truancy). Accordingly, because Act 250 is a neutral statute of general applicability, it also does not violate the protections provided by Chapter I, Article 3 of the Vermont Constitution.

Accordingly, summary judgment is GRANTED to the State with respect to Questions 2 and 5, in that Act 250 on its face does not violate the Free Exercise Clause of the First Amendment to the U.S. Constitution and does not violate Appellant-Applicants' right to the free exercise of religion under Chapter I, Article 3 of the Vermont Constitution.

In connection with the Court's consideration of the merits of the application, of course, the parties will be free to argue that any particular outcome or proposed conditions are precluded by the Free Exercise Clause of the First Amendment to the

U.S. Constitution or the right to the free exercise of religion under Chapter I, Article 3 of the Vermont Constitution.

<u>Questions 2 and 5 of the Statement of Questions: Freedom of Speech</u>

The First Amendment's broad protection of expressive activities is not unlimited. Reasonable regulation of the time, place, and manner of speech is permissible if it is necessary to further significant government interests. <u>Young v. American Mini Theaters, Inc.</u>, 427 U.S. 50, 62–63 (1976). Regulations must, however, be justified without reference to the content of the speech, must be narrowly tailored to serve a significant government interest, and must leave open alternative channels for communication. <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989) (quoting <u>Clark v. Community for Creative Non-Violence</u>, 468 U.S. 288, 293 (1984)). Act 250 is a content-neutral law designed to protect Vermont's character and natural beauty. See <u>Spring Brook Farm Foundation</u>, 164 Vt. at 287. Additionally, Act 250 is narrowly tailored to serve the State's interest in protecting the lands and environment of Vermont. See <u>Ward</u>, 491 U.S. at 799 (quoting <u>U.S. v. Albertini</u>, 472 U.S. 675, 689 (1985) (holding that the requirement for narrow tailoring is satisfied if the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.")). Thus, the only issue remaining with respect to the Free Speech Clause is whether Act 250, as applied to the cross, leaves open alternative channels of communication.

The Vermont Supreme Court has repeatedly held that the Vermont Constitution provides essentially the same protection of speech as the U.S. Constitution. See e.g. <u>State v. Read</u>, 165 Vt. 141, 154, 156 (1996) (determining that the provisions relating to speech in the Vermont Constitution mirror those in the U.S. Constitution and that defendant failed to demonstrate any more expansive free speech rights in the Vermont Constitution).

Accordingly, summary judgment is DENIED to both parties as to Questions 2 and 5 as they relate to the protection of free speech, because the remainder of the analysis depends upon how Act 250 will be applied to the merits of the present case. In connection with the Court's consideration of the merits of the application, the parties will be free to present evidence as to the availability of alternative channels of communication, and to argue that any particular outcome or proposed conditions are precluded by the Free Speech Clause of the First Amendment to the U.S. Constitution or the right to free speech under Chapter 1, Article 13 of the Vermont Constitution.

Question 4 of the Statement of Questions: RLUIPA

Question 4 of the Statement of Questions asks whether Act 250 as applied to the proposed cross substantially burdens Appellant-Applicants' free exercise of religion under the Religious Land Use and Institutionalized Persons Act of 2000. As already discussed, this Court will be applying Act 250 to the cross in a de novo proceeding, and therefore cannot yet determine whether Act 250 as applied to the cross will necessarily violate RLUIPA.

RLUIPA prohibits the State from imposing or implementing a land use regulation in a manner that imposes a "substantial burden" on the religious exercise of a person or group, unless the regulation is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C.A. § 2000cc(a)(1). RLUIPA defines a religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(a). This includes the use, conversion, or construction of property for the purposes of religious activity. 42 U.S.C.A. § 2000cc-5(7)(b); see also Westchester Day School v. Village of Mamaroneck, 504 F.3d 338, 347-48 (2d Cir. 2007) (noting that, while new classrooms that a religious school will use for religious education are protected by RLUIPA, a

new gymnasium not used for religious activity would not be protected).

Nevertheless, "[RLUIPA] does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination and unfair delay." 146 Cong. Rec. S. 7774, 7776 (2000) (Joint Statement of Senator Hatch and Senator Kennedy). That is, neutral regulations, justified by non-discriminatory planning goals, can require religious organizations to acquire the same special use and development permits as non-religious organizations and groups. Vision Church v. Village of Long Grove, 468 F.3d 975, 991 (7th Cir. 2006).

Appellant-Applicants have the initial burden of demonstrating that regulation of the cross under Act 250 will substantially burden their exercise of religion. 42 U.S.C.A. § 2000cc-2(b). Following Appellant-Applicants' production of prima facie evidence to support their claim, the burden shifts to the State to persuade the Court that regulation of the cross under Act 250 does not violate RLUIPA. Id. If the Court finds that the religious exercise is substantially burdened, the State must then prove that Act 250 is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C.A. § 2000cc(a)(1).

A substantial burden on an applicant's religious exercise exists if a permit decision impedes an activity that is closely related to the applicant's religious exercise, and (2) forces an applicant to act contrary to his or her religious beliefs and does more than merely inconvenience those beliefs. See Westchester Day School, 504 F.3d at 349; Shepherd Montessori Center Milan v. Ann Arbor Charter Tp., 675 N.W.2d 271, 281 (Mich. Ct. App. 2003). Similarly, a substantial burden also exists if a permit decision forces an applicant to choose between enjoying a generally available public benefit and following his or her religious beliefs. Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004).

11

On the other hand, a permit decision will not constitute a substantial burden if it merely prevents an applicant from enjoying a benefit that is not generally available, or prevents an applicant from acting in a way that is not generally allowed. <u>Adkins</u>, 393 F.3d at 570. Moreover, the presence of effective alternatives to the proposed use may counter the conclusion that a permit decision results in a substantial burden. See <u>Trinity Assembly of God of Baltimore City, Inc. v. People's Counsel for Baltimore County</u>, 941 A.2d 560, 574 (Md. Ct. Spec. App. 2008) (ruling that a church had multiple alternative means of preaching to and inspiring new members, other than through a proposed sign that was significantly larger than what was allowed by the zoning regulations). In essence, a generally applicable burden imposed by a neutral regulation, or a permit decision that has a minimal impact on the particular religious exercise, is not a substantial burden. <u>Westchester Day School</u>, 504 F.3d at 349–50.

Material facts have not been provided to allow the Court to determine the extent to which the proposed cross constitutes a religious exercise with regard to its proposed location, size, relative dimensions, illumination level, or illumination schedule. Nor have material facts been provided to allow the Court to determine the degree to which any potential limitations on the location, size, relative dimensions, illumination level, or illumination schedule of the cross would burden Appellant-Applicants' religious exercise. Accordingly, summary judgment is DENIED on Question 4. In connection with the Court's consideration of the merits of the application, the parties will be free to present evidence on these specific issues and to argue whether RLUIPA precludes a denial of the application or any specific limitation on the location, size, relative dimensions, illumination level, or illumination schedule of the cross.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Summary Judgment is GRANTED to the State and DENIED to Appellant-Applicants on Question 3 of the Statement of Questions. Summary Judgment is GRANTED to the State and DENIED to Appellant-Applicants with respect to Questions 2 and 5 of the Statement of Questions as they pertain to the Establishment Clause of the First Amendment to the U.S. Constitution and the Compelled Support Clause of the Vermont Constitution. Summary Judgment is also GRANTED to the State and DENIED to Appellant-Applicants with respect to Questions 2 and 5 of the Statement of Questions, in that Act 250 on its face does not violate the Free Exercise Clause of the First Amendment to the U.S. Constitution and does not violate the free exercise of religion provisions of Chapter I, Article 3 of the Vermont Constitution.

Summary judgment is otherwise DENIED with respect to Questions 2 and 5 of the Statement of Questions with regard to Act 250 as applied. Summary judgment is DENIED as to Question 4 of the Statement of Questions, as material facts are in dispute.

A telephone conference has been scheduled to discuss the scope and order of the trial (see enclosed notice).

Done at Berlin, Vermont, this 29th day of November, 2010.

_____
Merideth Wright
Environmental Judge

13