**NORTHERN ARAPAHO TRIBE, on its own behalf and on behalf of its members, and Jim Shakespeare, Chairman, Northern Arapaho Business Council, in his official and individual capacities, Plaintiffs,**

v.

**Daniel M. ASHE, Director, United States Fish and Wildlife Service, and Matt Hogan, Assistant Regional Director, Region 6, Migratory Birds and State Programs, in their official capacities, Defendants.**

Case No. 11–CV–347–J.

United States District Court,
D. Wyoming.

Nov. 5, 2012.

Order Denying Motion to Amend
Dec. 18, 2012.

Order Denying Motion to Certify
Appeal Jan. 23, 2013.

Terri V. Smith, Andrew W. Baldwin, Baldwin Crocker & Rudd, Lander, WY, for Plaintiffs.

Barbara M.R. Marvin, Department of Justice, Washington, DC, Carter Healy Coby Howell, Department of Justice, Portland, OR, Nicholas Vassallo, U.S. Attorney's Office, Cheyenne, WY, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT FOR DEFENDANTS

ALAN B. JOHNSON, District Judge.

Plaintiffs Northern Arapaho Tribe and Jim Shakespeare, a tribal member, applied to the United States Fish and Wildlife Service for a permit allowing them to take eagles for use in their religious ceremonies. Two and a half years after receiving Plaintiffs' application, the Fish and Wildlife Service granted the permit by allowing Plaintiffs to take eagles within Wyoming, but the permit does not allow Plaintiffs to take eagles within their own Reservation located in west central Wyoming. Plaintiffs brought suit against Defendants alleging that the Fish and Wildlife Service had violated the Free Exercise Clause of the First Amendment, the Religious Freedom Restoration Act of 1993 ("RFRA"), and the Administrative Procedure Act ("APA") by delaying the permit for two and a half years and by refusing to allow Plaintiffs to take eagles within their Reservation. Plaintiffs filed a motion for partial judgment on the pleadings—which this Court converted to a motion for partial summary judgment—asking this Court for declaratory and injunctive relief on their RFRA claims. The Court denies Plaintiffs' motion and grants Defendants summary judgment on Plaintiffs' RFRA claims.

### STANDARD OF REVIEW

The standard of review for summary

judgment applies here.[1] "Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1311 (10th Cir.2010). Applying this standard, the Court views the factual record and draws all reasonable inferences from that record most favorably to the non-moving party. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

## FACTS

This motion calls upon the Court to apply the Religious Freedom Restoration Act of 1993, Pub.L. No. 103–141 (codified at 42 U.S.C. § 2000bb to 2000bb–4 (2006)). Plaintiffs are the Northern Arapaho Tribe—a federally-recognized Indian tribe located on the Wind River Indian Reservation in west central Wyoming—and Jim Shakespeare, a Northern Arapaho tribal member and chairman of the Northern Arapaho Business Council. Am. Compl. 3, ECF No. 18. Defendants are Daniel Ashe, the director of the United States Fish and Wildlife Service, and Matt Hogan, an assistant regional director of the Migratory Birds and State Programs within the Fish and Wildlife Service (collectively "FWS"). *Id.*

Several years ago, Congress passed the Bald and Golden Eagle Protection Act ("Eagle Act"), which prohibits possessing any part of a bald or golden eagle. *See* 16 U.S.C. § 668(a) (2006). An exception exists, however, for Indian tribes:

> Whenever, after investigation, the Secretary of the Interior shall determine that it is compatible with the preservation of the bald eagle or the golden eagle to permit the taking, possession, and transportation of specimens thereof ... for the religious purposes of Indian tribes ... he may authorize the taking of such eagles pursuant to regulations which he is hereby authorized to prescribe.

*Id.* § 668a. Acting through the Fish and Wildlife Service, the Secretary has formulated regulations governing eagle permits, *see* 50 C.F.R. §§ 22.1–22.32 (2011), and members of federally-recognized Indian tribes are free to apply to the Fish and Wildlife Service for an eagle take permit[2], *see id.* § 22.22.

In October 2009, Plaintiffs applied for a permit to take eagles within their Reservation—a Reservation that they share as tenants in common with the federally-recognized Eastern Shoshone Tribe, *see Shoshone Tribe v. United States,* 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937)—for use in Plaintiffs' religious ceremonies. *See* Am. Compl. 4–5. Ten months after receiving Plaintiffs' application, the FWS notified Plaintiffs that their application was deficient because it was incomplete. *See* Pls.' Mem. 2, ECF No. 30. In October 2010, Plaintiffs submitted a revised application curing the deficiencies. *Id.* at 2–3.

---

1. Plaintiffs originally filed a motion for judgment on the pleadings, *see* Pls.' Mot. 2, ECF No. 29, but this Court converted that motion to one for summary judgment because both parties presented matters outside the pleadings in their respective briefs, *see* Order, ECF No. 38.

2. "Take means pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, destroy, molest, or disturb." 50 C.F.R. § 22.3(2011).

The revised application requested permission to take one or two adult bald eagles within the Reservation on an annual basis for use in Plaintiffs' religious ceremonies. *Id.* at 3.

After receiving Plaintiffs' revised application, the FWS engaged in a consultation process with the Northern Arapaho Tribe and the Eastern Shoshone Tribe over the next year and a half. *See id.* at 3. During these consultations, the IFWS learned that the Eastern Shoshone opposed eagle take on the Reservation, in part, because of the Eastern Shoshone's religious and cultural beliefs. *See* Defs.' Resp. 6–7, ECF No. 34. The FWS finished its consultation process in late 2011 and issued a renewable eagle take permit to Plaintiffs in March 2012. *Id.* at 7. The permit allows Plaintiffs to take up to two adult bald eagles per year within Wyoming, but it prohibits Plaintiffs from taking bald eagles within the Reservation. Am. Compl. 5, ECF No. 18.

Plaintiffs were not thrilled with this sequence of events. They filed suit against Defendants raising claims based on the Free Exercise Clause of the First Amendment, RFRA, and the APA. *Id.* at 7–9. Regarding Plaintiffs' RFRA claims, they argue that the FWS's two and a half year delay in issuing the eagle take permit violated RFRA, and that the FWS's refusal to allow Plaintiffs to take eagles within their Reservation also violates RFRA. *See id.* at 7–8.

Plaintiffs filed a motion for partial judgment on the pleadings for their RFRA claims which this Court converted[3] to a motion for partial summary judgment. *See generally* Pls.' Mot., ECF No. 29. In their motion, Plaintiffs seek a declaratory judgment that the FWS violated RFRA by delaying issuance of Plaintiffs' permit and an injunction ordering the FWS to process Plaintiffs' future eagle take permit applica-

tions within three months of submission. *See* Pls.' Mem. 2, 10, ECF No. 30. Plaintiffs also want a declaratory judgment that the FWS's refusal to allow eagle take within Plaintiffs' Reservation violates RFRA and an injunction ordering the FWS to modify Plaintiffs' existing permit to allow eagle take within the Reservation. *Id.* at 2.

Defendants filed a response opposing Plaintiffs' motion on several grounds. *See generally* Defs.' Resp., ECF No. 34. First, they argue that Plaintiffs' motion is procedurally improper and should be denied because it is contrary to the record review rule that applies to cases brought under the APA. *Id.* at 15. Second, they argue that Plaintiffs lack standing for their RFRA claims. *Id.* at 17. Third, they argue that the FWS did not violate RFRA because it did not impose a substantial burden on Plaintiffs' religious exercise, and even if it did the FWS's conduct was justified by compelling governmental interests furthered via the least restrictive means. *See id.* at 25–34.

The Court will review Defendants' contention that the record rule applies here before turning to the issue of Plaintiffs' standing. The Court will then address the heart of this matter—whether the FWS violated RFRA—followed by a brief conclusion.

## DISCUSSION

### I. The Record Rule

The FWS argues that "Plaintiffs' motion . . . should be denied because it is contrary to the record review rule that applies to cases brought under the APA." Defs.' Resp. 15, ECF No. 34. "The record rule refers to the general rule of administrative law that a court can engage in judicial review of an agency action based only on

---

**3.** *See supra* note 1.

consideration of the record amassed at the agency." 2 Richard J. Pierce, Jr., *Administrative Law Treatise* 1047 (5th ed.2010).

■ The Court rejects the FWS's argument for two reasons. First, the only court to directly address this issue has held that the record rule does not apply to RFRA claims. *See S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, No. 3:08–CV–00616–LRH–RAM, 2009 WL 73257, at *3 (D.Nev. Jan. 7, 2009) ("The Court finds that limiting its review of the RFRA claim to the administrative record is inappropriate here.").

Second, while the FWS correctly states that under the APA "the task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court," *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), Plaintiffs' claim here is not under the APA, it's under RFRA, *see* Pls.' Mem. 2, ECF No. 30 (seeking declaratory and injunctive relief under RFRA). RFRA provides Plaintiffs with a cause of action that is. separate from the APA. *See* 42 U.S.C. § 2000bb–1(c) (2006) ("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government."); *United States v. Wilgus*, 638 F.3d 1274, 1279 (10th Cir.2011) ("RFRA provides a statutory claim to individuals whose religious exercise is burdened by the federal government."). RFRA also provides a different standard of review of government action than the APA. *Compare* 42 U.S.C. § 2000bb–1(a)–(b) (2006) (reviewing whether government action substantially burdens a person's religious exercise and whether the burden is justified by a compelling governmental interest advanced via the least restrictive means), *with* 5 U.S.C. § 706(2)(A) (2006) (reviewing whether agency action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law).

In short, RFRA and the APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims.

## II. Standing

Plaintiffs want declaratory and injunctive relief on their RFRA claims. Pls.' Mem. 2, ECF No. 30. Because "a plaintiff must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), it's helpful to parse out exactly what relief Plaintiffs want here. First, Plaintiffs want a declaratory judgment that the FWS's two and a half year delay in issuing Plaintiffs' eagle permit violated RFRA and an injunction ordering the FWS to process Plaintiffs' future eagle take permit applications within three months of submission. Pls.' Mem. 2, 10, ECF No. 30. Second, Plaintiffs want a declaratory judgment that the FWS's refusal to allow eagle take within Plaintiffs' Reservation violates RFRA and an injunction ordering the FWS to modify Plaintiffs' current permit to allow them to take eagles within their Reservation. *Id.* at 2. The Court concludes that Plaintiffs have standing to seek the second claim of relief, but not the first.

A. *Plaintiffs lack standing to seek declaratory and injunctive relief regarding the FWS's delay in issuing Plaintiffs' eagle take permit.*

■ Plaintiffs lack standing to seek a declaratory judgment that the FWS violated RFRA by delaying issuance of Plaintiffs' eagle take permit for two and a half

years and injunctive relief ordering the FWS to process Plaintiffs' future eagle take permit applications within three months of submission because Plaintiffs have failed to demonstrate that they are likely to suffer similar delays in the future.

In *City of Los Angeles v. Lyons*, the Supreme Court held that a plaintiff seeking declaratory and injunctive relief for a prior injury must show a sufficient likelihood of future harm to establish standing. 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The Tenth Circuit similarly has stated that a plaintiff "cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991). The Supreme Court clarified the scope of *Lyons* in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), by clarifying the distinction between cases where the alleged injury has already occurred and cases where the injury is ongoing. In *McLaughlin*, the Court held that a plaintiff has standing to seek declaratory and injunctive relief if the plaintiff alleges "a direct and current injury" and the plaintiff's injury at the time of the complaint is "capable of being redressed through injunctive relief." *Id.* at 51, 111 S.Ct. 1661. Thus, *Lyons* applies when the "objectionable practice [has] ceased altogether before Plaintiff file[s] his complaint," *id.*, but *McLaughlin* applies when the plaintiff's alleged injury is ongoing. *McLaughlin* teaches that there's a difference for standing purposes when a plaintiff asks a court to tell a defendant "don't do it again" and when a plaintiff asks a court to tell a defendant to "stop doing it."

*Lyons*, not *McLaughlin*, applies to Plaintiffs' request for declaratory and injunctive relief ordering the FWS to process Plaintiffs' future eagle take permit applications within three months of sub-mission because the FWS's "objectionable practice"—delaying issuance of Plaintiffs' eagle take permit—had ceased by the time Plaintiffs filed their amended complaint. Plaintiffs filed their amended complaint on March 30, 2012, *see* Am. Compl., ECF No. 18., twenty-one days after the FWS issued Plaintiffs their permit, *see id.* at 5 ("On March 9, 2012, Defendants issued a permit to the Tribe . . . ."). Regarding the delay, Plaintiffs want this Court essentially to tell the FWS "don't do it again," thereby triggering *Lyons* and the requirement that they establish standing by demonstrating that there is a good chance that the FWS will delay issuing future eagle take permits. This they have failed to do.

Plaintiffs make no arguments for why the FWS is likely to delay issuing future permits. *See* Pls.' Mem. 9–10, ECF No. 30. Moreover, the delay in this case resulted from the difficult and novel issues it raised. It was difficult because the FWS had to engage in an exhaustive consultation process with both tribes to become fully versed in the inter-tribal dispute on the Reservation, *see* Defs.' Resp. 22, ECF No. 34, and it was novel because "[i]t does not appear that any permit for take of eagles on a shared reservation has ever been considered before, and no permit for take of bald eagles has ever been issued before," *id.* at 24. The Court agrees with the FWS that the next time Plaintiffs apply for an eagle take permit the issue will be neither difficult nor novel for the FWS, and thus "there is no basis to conclude that there will be future delay." *Id.* at 22.

The regulations governing Plaintiffs' permit make it even less likely that Plaintiffs will again suffer the injury of waiting long periods of time for the FWS's authorization to take eagles. Plaintiffs' eagle take permit is renewable, *see* Administrative R. 71, which means the permit is subject to those regulations governing re-

newal of permits, 50 C.F.R. § 13.22 (2007). The regulations provide that Plaintiffs can apply for renewal of their permit, *id.* § 13.22(a), and that the FWS *must* renew so long as Plaintiffs "meet[ ] the criteria for issuance in § 13.21(b) and [are] not disqualified under § 13.21(c)," *id.* at 13.22(b). Not only do the regulations essentially require the FWS to renew Plaintiffs' permit, Plaintiffs would be permitted to continue taking eagles even if the FWS delayed granting a renewal:

> Any person holding a valid, renewable permit may continue the activities authorized by the expired permit until the [FWS] acts on the application for renewal if all of the following conditions are met: (1) The permit is currently in force and not suspended or revoked; (2) The person has complied with this section; and (3) The permit is not a CITES document that was issued under part 23 of this subchapter (because the CITES document is void upon expiration).

*Id.* § 13.22(c). Thus, Plaintiffs are unlikely to suffer another delay like the one here because, under the regulations governing Plaintiffs' permit, Plaintiffs can seek renewal of their permit, the FWS essentially is required to automatically grant renewal, and, even if the FWS delayed renewal, Plaintiffs would be free to continue taking eagles under their current permit until the FWS acted on their renewal application.

Plaintiffs were required to establish standing by demonstrating that there is a good chance that they will suffer future delays similar to the two and a half year delay here. Plaintiffs make no arguments for why such delays are likely. Furthermore, this Court finds that future delays are unlikely under the regulations governing Plaintiffs' current permit and because the FWS is now familiar with the issues concerning Plaintiffs' permit. Therefore, this Court concludes that Plaintiffs lack standing to seek declaratory and injunctive relief ordering the FWS to process future eagle take permit applications within three months of submission because Plaintiffs have failed to demonstrate that they are likely to suffer delays in the future.

B. *Plaintiffs have standing to seek a declaratory judgment that the FWS's refusal to allow eagle take within Plaintiffs' Reservation violates RFRA and an injunction ordering the FWS to modify the current permit.*

■ Plaintiffs have standing to seek a declaratory judgment that the FWS's refusal to allow eagle take within Plaintiffs' Reservation violates RFRA and an injunction ordering the FWS to modify Plaintiffs' current eagle take permit because Plaintiffs have established injury, causation, and redressability. The permit, which prohibits Plaintiffs from taking eagles within their Reservation, represents an ongoing injury to Plaintiffs such that this claim for declaratory and injunctive relief is not subject to the *Lyons* rule requiring them to show a sufficient likelihood of future injury. Rather, Plaintiffs simply must establish the familiar standing requirements:

> (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

Plaintiffs have established the "injury in fact" element of standing. They contend that the FWS's refusal to allow eagle take within Plaintiffs' Reservation injures them by substantially burdening their religious exercise, by requiring tribal members to travel greater distances to find eagles, by making it more difficult to find suitable locations to take eagles, and by requiring tribal members to bear additional expenses for travel, lodging, and other logistics. *See* Pls.' Mem. 11 n. 15, ECF No. 30. These allegations establish the "injury in fact" element of standing.

Plaintiffs' alleged injuries are fairly traceable to the FWS's conduct. The second standing element requires that a plaintiff's injury "fairly can be traced to the challenged action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Here, Plaintiffs' alleged injuries trace directly to the FWS's refusal to allow eagle take within the Reservation.

Plaintiffs' alleged injuries likely will be redressed by granting Plaintiffs' the relief that they seek. The third standing element requires "that Plaintiff's injury will likely be redressed by a favorable decision." 15 Martin H. Redish, *Moore's Federal Practice* § 101.42(1) (3d ed.2012); *see Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 892 (10th Cir.2011). Here, granting Plaintiffs an injunction ordering the FWS to allow Plaintiffs to take eagles within the Reservation would redress the alleged burden on their religious exercise and the burdens of having to travel off the Reservation to take eagles. Thus, this Court concludes that Plaintiffs have standing to seek a declaratory judgment that FWS's refusal to allow Plaintiffs to take eagles within their Reservation violates RFRA and an injunction ordering the FWS to modify Plaintiffs' permit because Plaintiffs have established injury, causation, and redressability.

## III. RFRA

■ Plaintiffs allege that the FWS's refusal to allow Plaintiffs to take eagles within their Reservation violates RFRA. Pls.' Am. Compl. 8, ECF No. 18. RFRA "prohibits the federal government from substantially burdening the religious freedom of individuals, unless it does so to forward a compelling governmental interest via the least restrictive means." *United States v. Wilgus,* 638 F.3d 1274, 1277 (10th Cir. 2011); *see* 42 U.S.C. § 2000bb–1(a)–(b) (2006). RFRA cannot constitutionally be applied to the States, *see City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), but the Tenth Circuit has held that RFRA still applies to the federal government, *see Kikumura v. Hurley,* 242 F.3d 950, 959–60 (10th Cir. 2001).

Under RFRA, Plaintiffs have the burden of proving that the FWS has substantially burdened their religious exercise by a preponderance of the evidence. *See Wilgus,* 638 F.3d at 1279. If Plaintiffs do so, then the burden shifts to the FWS to prove that its conduct is the least restrictive means of forwarding a compelling governmental interest. *See id.*

### A. Substantial Burden

Plaintiffs have the burden of proving that the FWS substantially burdened their religious exercise. *United States v. Wilgus,* 638 F.3d 1274, 1279 (10th Cir.2011). Specifically, Plaintiffs must make a prima facie showing that the FWS's action (1) substantially burdens (2) a sincere (3) religious belief. *See Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006). The FWS concedes that Plaintiffs' beliefs are both sincere and

religious, *see* Defs.' Resp. 8, ECF No. 34, but it disputes the substantial burden question.

Plaintiffs argue that the FWS's refusal to allow eagle take within Plaintiffs' Reservation imposes a substantial burden on their religious exercise for three reasons. First, they argue that Tenth Circuit precedent has already settled the substantial burden question in this case. *See* Pls.' Mem. 7, ECF No. 30.[4] Second, they argue that the permit imposes significant inconveniences on tribal members' religious exercise which rise to the level of imposing a substantial burden. *Id.* at 11 n. 15. Third, they argue that they can't use the permit off the Reservation where state law applies because taking eagles is prohibited by Wyoming law. *Id.* at 29. The FWS argues that Tenth Circuit precedent does not resolve the substantial burden question here, *see* Defs.' Resp. 25, ECF No. 34, that mere inconveniences do not impose a substantial burden, *see id.* at 26, and that Plaintiffs can avoid Wyoming's prohibition against taking eagles by applying for an eagle take permit from the Wyoming Game and Fish Department, *see id.* at 32.

Unfortunately, the Tenth Circuit's definition of "substantial burden" in the RFRA context is uncertain. In *Werner v. McCotter*, it stated that government action substantially burdens religious exercise under RFRA if the action (1) significantly inhibits or constrains conduct or expression that manifests some central tenet of plaintiff's religion; (2) meaningfully curtails a plaintiff's ability to express adherence to plaintiff's faith; or (3) denies plaintiff a reasonable opportunity to engage in those activities that are fundamental to

plaintiff's religion. 49 F.3d 1476, 1480 (10th Cir.1995); *see Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir.1996) (reciting the same test). In *Grace United Methodist Church v. City of Cheyenne*, however, the Tenth Circuit recognized that the *Werner/Thiry* substantial burden test was no longer valid in light of amendments to RFRA eliminating the requirement that plaintiff prove that the government burdened a "central tenet" of or something "fundamental" to plaintiff's religious beliefs. *See* 451 F.3d 643, 663 (10th Cir. 2006). But, after invalidating the *Werner/Thiry* test, the Tenth Circuit did not provide a new one.

Then, in *Abdulhaseeb v. Calbone*, the Tenth Circuit defined "substantial burden" under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which uses language nearly identical to RFRA, differently than it had defined substantial burden in the RFRA context:

[A] religious exercise is substantially burdened under [RLUIPA] when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

---

**4.** Plaintiffs rely heavily on two cases: *United States v. Hardman*, 297 F.3d 1116 (10th Cir. 2002), and *United States v. Friday*, 525 F.3d 938 (10th Cir.2008). In *Hardman*, the court stated, "[a]ny scheme that limits [Native Americans'] access to eagle feathers therefore must be seen as having a substantial effect on

the exercise of religious belief." *Hardman*, 297 F.3d at 1126–27. In *Friday*, the court stated, "a law that limits [tribal members'] access to the eagle needed for the [Sun Dance] ceremony substantially burdens their ability to exercise their religion." *Friday*, 525 F.3d at 947.

600 F.3d 1301, 1315 (10th Cir.2010). After these cases, it's uncertain whether the Tenth Circuit uses a modified version of the *Werner/Thiry* test or the *Abdulhaseeb* test to determine what constitutes a "substantial burden" under RFRA.

Thankfully, this Court need not resolve this uncertainty here. Because the Court concludes that the current permit reflects the least restrictive means of furthering the FWS's compelling interests, the Court assumes (without deciding) that the FWS's refusal to allow Plaintiffs to take eagles within their Reservation places a substantial burden on Plaintiffs' religious exercise. *See Shamloo v. Miss. State Bd. of Trs.*, 620 F.2d 516, 524 (5th Cir.1980) ("[C]ases are to be decided on the narrowest legal grounds available.").

B. *Least Restrictive Means, Compelling Governmental Interests*

Whether the FWS has chosen the least restrictive means of advancing its compelling interests is a question of law. *See United States v. Wilgus*, 638 F.3d 1274, 1284 (10th Cir.2011) ("[W]hether the government has chosen the least restrictive means to advance its compelling interest is a question of law. . . ."). The Tenth Circuit has recognized at least two compelling governmental interests in cases like this one. First, "the government has a compelling interest in protecting the bald eagle as our national symbol, and the golden eagle, as its survival and the survival of the bald eagle are intimately intertwined." *Id.* at 1285. Second, the government has a compelling interest in fostering the culture and religion of federally-recognized Indian tribes. *See id.* at 1285–88.

The problem here is not that the FWS lacks a compelling interest, but that its compelling interests in fostering and protecting the culture and religion of both the Eastern Shoshone and the Northern Arapaho conflict with each other. The Eastern Shoshone oppose eagle take within the Reservation on religious and cultural grounds, Defs.' Resp. 28, ECF No. 34, but the Northern Arapaho require taking eagles for their religious ceremonies, *see United States v. Friday*, 525 F.3d 938, 943 (10th Cir.2008). By refusing to allow Plaintiffs to take eagles within the Reservation, the FWS furthered its compelling interest in fostering and protecting the Eastern Shoshone's culture and religion while simultaneously disserving, at least to some extent, Plaintiffs' culture and religion. The FWS was between a rock and a hard place. No matter what policy it chose—either allowing or disallowing eagle take within the Reservation—it would have furthered its compelling interest with regard to one tribe and disserved its compelling interest with regard to the other.

Fortunately, *Wilgus* provides guidance for how to analyze a case when the government's compelling interests are in conflict. *Wilgus* warrants some discussion here because it provides the analytical framework that this Court applies to resolve this matter. In *Wilgus*, a follower of a Native American faith who was neither a member of a federally-recognized tribe nor an Indian by birth was convicted of possessing bald and golden eagle feathers in violation of the Eagle Act. *Wilgus*, 638 F.3d at 1277. The man argued that his conviction could not stand because it violated his rights under RFRA. *See id.* A prior case already had established that the Eagle Act's limitation of eagle permits to members of federally-recognized tribes imposed a substantial burden on the man's religious exercise. *Id.* at 1284. The case thus turned on whether the government had advanced its compelling governmental interests via the least restrictive means.

Similar to the tension between the FWS's compelling interests in this case, the *Wilgus* court noted that "[t]he two

compelling interests in this case—eagle protection and providing for the religious needs of members of federally-recognized tribes—are, to at least some degree, in conflict." *Id.* at 1290. The court then stated the proper analytical framework for such cases: A court must determine whether the government's action balances and advances its conflicting compelling interests, and whether any of the alternative schemes proffered by the parties and supported in the record would also advance and balance those interests, but would do so in a way that is less burdensome on religious exercise. *See id.* at 1289–90. The government bears the burden of supporting its chosen conduct and refuting the alternative schemes offered by the challenger, and it must do both through the evidence presented in the record. *See id.* at 1289.

Applying this framework, the court considered three alternatives: (1) opening the National Eagle Repository to all sincere practitioners of Native American religion, regardless of their tribal membership or lack thereof; (2) allowing tribal members who lawfully possess eagle parts to give those parts as gifts to non-tribal-members who are nevertheless sincere practitioners of Native American religions; and (3) the government's existing regulatory framework limiting lawful possession of eagle feathers to members of federally-recognized Indian tribes. *Id.* at 1290. The court rejected the first alternative because, even though it would lessen the burden on the man's religious exercise, it "would fail to advance the government's compelling interest in preserving the religion and culture of federally-recognized Indian tribes." *Id.* at 1293–94. The court rejected the second alternative on the same basis: The alternative "fails to advance the government's compelling interest in protecting and fostering the religion and culture of federally-recognized Indian tribes." *Id.* at 1295. The court concluded that the third

alternative was the least restrictive means of forwarding the government's compelling interests because it was the only alternative that advanced and balanced both of the government's compelling interests. *See id.*

*Wilgus* teaches that this Court must determine whether the FWS advanced and balanced its two compelling interests, and whether any of the proffered alternative schemes in the record would also advance and balance the FWS's compelling interests, but would do so in a manner less burdensome on Plaintiffs' religious exercise. *See id.* at 1290. The FWS has the burden of defending the current permit and refuting the: alternative schemes offered by Plaintiffs, but it must do both through the evidence presented in the record. *See id.* at 1289. The Court first considers Plaintiffs' proffered alternative and then turns to the other alternatives in the record.

### 1. Plaintiffs' Alternative: Allowing Plaintiffs to Take Eagles within Their Reservation

Plaintiffs argue that the FWS could lessen the burden on their religious exercise by allowing them to take eagles within the Reservation. *See* Pls.' Mem. 34, ECF No. 30. The Court agrees that this alternative would lessen the burden on Plaintiffs' religious exercise by allowing Plaintiffs greater access to eagles, and it also would advance the FWS's compelling interest in fostering Plaintiffs' culture and religion.

■ But allowing Plaintiffs to take eagles within the Reservation would not advance the FWS's compelling interest in fostering and protecting the Eastern Shoshone's culture and religion and would throw the balance between the FWS's conflicting compelling interests out of whack. Plaintiffs' alternative would have required the FWS to give no weight or consideration to the Eastern Shoshone's cultural

and religious objections to eagle take within the Reservation. Plaintiffs' alternative strikes no balance at all. Thus, like *Wilgus,* where the court rejected those alternatives that failed to advance the government's compelling interest in fostering and protecting the culture and religion of federally-recognized Indian tribes, *see* 638 F.3d at 1292–94, this Court rejects Plaintiffs' alternative because it would fail to advance the FWS's compelling interest in fostering and protecting the Eastern Shoshone's culture and religion.

## 2. The FWS's Alternative: Allow Plaintiffs to Take Bald Eagles for Their Religious Ceremonies but not within the Reservation

The record shows that the FWS considered four alternatives in this matter. *See* Administrative R. 533. It considered Plaintiffs' alternative but correctly concluded that allowing Plaintiffs to take eagles within the Reservation would have required it to impermissibly disregard the Eastern Shoshone's cultural and religious beliefs. *See id.* The FWS also considered denying the permit outright, but it correctly concluded that outright denial would not have advanced its compelling interest in fostering and protecting, Plaintiffs' culture and religion. *See id.* The FWS also considered referring Plaintiffs to the National Eagle Repository, but it has conceded that "requiring [Plaintiffs] to use the Repository is not the least restrictive means of achieving the [FWS's] compelling interests in protecting bald eagle populations and protecting [Plaintiffs'] religion and culture." *Id.* The FWS ultimately adopted a fourth alternative and explained its choice this way:

> [T]he [FWS] considered and chose a fourth option: approving a permit for take outside the boundaries of the Wind River Reservation. This would allow [Plaintiffs] to take a live eagle for religious purposes in a manner that would avoid ... burdening the religious and cultural beliefs and practices of the [Eastern Shoshone].

*Id.*

The Court agrees with the FWS that this alternative is the least restrictive means of forwarding the FWS's compelling governmental interests. The FWS's alternative advances and balances the FWS's competing compelling interests in fostering and protecting both tribes' cultures and religions. It advances the Eastern Shoshone's culture and religion by accommodating their objections to eagle take within the Reservation, and it also advances Plaintiffs' culture and religion by accommodating their need to take eagles for their religious ceremonies. No alternatives in the record strike such a balance in a way that is less burdensome on Plaintiffs' religious exercise. This Court therefore concludes that the FWS did not violate RFRA because it advanced and balanced its compelling interests via the least restrictive means.

## CONCLUSION

The Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims because RFRA and the APA provide two distinct causes of action with different standards of review. Plaintiffs lack standing to pursue a declaratory judgment that the FWS violated RFRA by delaying issuance of Plaintiffs' eagle take permit for two and a half years and injunctive relief ordering the FWS to process Plaintiffs' future eagle take permit applications within three months of submission because Plaintiffs have failed to demonstrate that they are likely to suffer similar delays in the future. Plaintiffs have standing to seek a declaratory judgment that FWS's refusal to allow eagle take within Plaintiffs' Reservation violates RFRA and an injunction ordering the FWS to modify Plaintiffs' current eagle take permit because Plain-

tiffs have established injury, causation, and redressability. The Court assumes (without deciding) that the FWS's refusal to allow Plaintiffs to take eagles within their Reservation places a substantial burden on Plaintiffs' religious exercise, and it concludes that the FWS did not violate RFRA because it advanced and balanced its compelling interests via the least restrictive means. It is therefore

ORDERED that Plaintiffs' motion for partial summary judgment is DENIED.

It is further ORDERED that summary judgment be entered in favor of Defendants on Plaintiffs' RFRA claims.

It is further ORDERED that within thirty (30) days of this order Plaintiffs advise this Court of whether and how they wish to proceed regarding their Free Exercise and APA claims.

## ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

Plaintiffs Northern Arapaho Tribe and Jim Shakespeare brought suit against Defendants Daniel Ashe and Matt Hogan—officials within the United States Fish and Wildlife Service—alleging, among other things, that Defendants had violated the Religious Freedom Restoration Act by refusing to permit Plaintiffs to take eagles within the Wind River Indian Reservation for use in Plaintiffs' religious ceremonies. This Court granted summary judgment for Defendants on Plaintiffs' Religious Freedom Restoration Act claims. Plaintiffs have now filed a motion asking this Court to alter or amend that judgment. The Court denies Plaintiffs' motion.

### STANDARD OF REVIEW

 The standard of review for a Rule 59(e) motion to alter or amend a

judgment applies here. "A motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212 (10th Cir.2012). Altering or amending a judgment generally is appropriate in three circumstances: (1) an intervening change in the controlling law has occurred, (2) new evidence previously unavailable is now available, or (3) alteration or amendment is necessary to correct clear error or to prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.2000). Also, a court can alter or amend its judgment if it has misapprehended the facts, a party's position, or the controlling law. *Id.* A court should not alter or amend its judgment, however, where the motion asks the court to revisit issues the court already has addressed or where the moving party advances arguments that could have been raised in a prior briefing. *Id.*

### FACTS

Plaintiffs are the Northern Arapaho Tribe—a federally-recognized Indian tribe located on the Wind River Indian Reservation in west-central Wyoming—and Jim Shakespeare, a Northern Arapaho tribal member and chairman of the Northern Arapaho Business Council. Am. Compl. 3, ECF No. 18. Defendants Daniel Ashe and Matt Hogan are officials within the United States Fish and Wildlife Service. *Id.*

A few years ago, Plaintiffs applied to the Fish and Wildlife Service for a permit to take[1] eagles within their Reservation for

---

**1.** "Take means pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, destroy, molest, or disturb." 50 C.F.R. § 22.3 (2011).

use in their religious ceremonies. *See id.* 4–5. Plaintiffs share the Wind River Indian Reservation as tenants in common with another federally-recognized Indian tribe, the Eastern Shoshone. *See generally Shoshone Tribe v. United States,* 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937). The Eastern Shoshone opposed Plaintiffs' permit application based on the Eastern Shoshone's cultural and religious objections to killing eagles. Order 1209–10, ECF No. 45. The Fish and Wildlife Service eventually granted Plaintiffs a permit allowing them to take up to two adult bald eagles per year within Wyoming, but the permit does not allow Plaintiffs to take eagles within the Reservation. Am. Compl. 5, ECF No. 18.

Plaintiffs then brought suit against Defendants, alleging, among other things, that Defendants had violated the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb to 2000bb–4 (2006), by refusing to permit Plaintiffs to take eagles within their Reservation. Am. Compl. 7–9, ECF No. 18. Plaintiffs moved for summary judgment on their RFRA claims, *see* Order 1210, ECF No. 45, and the Court received briefing and held a hearing on the issues raised by Plaintiffs' summary judgment motion. The Court eventually granted summary judgment on Plaintiffs' RFRA claims in favor of Defendants. *Id.* at 1208–09. The Court assumed (without deciding) that Defendants' refusal to permit Plaintiffs to take eagles within their Reservation placed a substantial burden on Plaintiffs' religious exercise, and the Court concluded that Defendants had not violated RFRA because they had advanced and balanced their compelling interests in fostering the culture and religion of both the Eastern Shoshone and the Northern Arapaho via the least restrictive means. *See id.* at 1218–19.

Plaintiffs have now filed a motion asking this Court to alter or amend its judgment.

*See* Pls.' Mot. 2, ECF No. 46. Plaintiffs argue that this Court should alter or amend its judgment because it misapprehended certain facts and controlling law such that reconsideration of the judgment is warranted. *See id.* Defendants respond that "[n]one of the arguments Plaintiffs now offer demonstrates that there is any new evidence, or any clear error of law or fact by the Court, or that any manifest injustice will result from the Court's ruling. Plaintiffs thus fail to satisfy the requisites for reconsideration." Defs.' Resp. 1, ECF No. 47. The Court will summarize and then respond to Plaintiffs' arguments before concluding.

## DISCUSSION

Plaintiffs argue that the Court "misapprehended certain facts ... and controlling law such that reconsideration of the judgment is warranted to prevent manifest injustice." Pls.' Mot. 2, ECF No. 46. Regarding the Court's misapprehension of facts, Plaintiffs argue (1) that the Court erroneously concluded that allowing Plaintiffs to take eagles within the Reservation would burden the Eastern Shoshone's religious practices, *see id.* at 2–3, and (2) the Court failed to consider the substantial burden Wyoming's prohibition against eagle take imposes on Plaintiffs' religious exercise, *see id.* at 10. Plaintiffs also argue that the Court misapprehended and misapplied the Tenth Circuit's *Wilgus* decision. *See id.* at 7–9. Plaintiffs' final argument is that the Court misapprehended Plaintiffs' position by failing to consider other alternatives advanced by Plaintiffs. *See id.* at 11. The Court concludes that none of Plaintiffs' arguments has merit and denies Plaintiffs' motion.

Plaintiffs' first argument is that the Court erroneously concluded that allowing Plaintiffs to take eagles within the Reservation would burden the Eastern Sho-

shone's religious practices. *See id.* at 2–3. The flaw in Plaintiffs' argument is that it focuses exclusively on whether eagle take within the Reservation implicates the Eastern Shoshone's cultural and religious *practices* without considering whether eagle take within the Reservation implicates the Eastern Shoshone's cultural and religious *beliefs* concerning eagles. *See id.* 2–7. The record here conclusively demonstrates that "the eagle is sacred to [the Eastern Shoshone's] religious beliefs and that they opposed allowing eagle take on the Reservation for this reason." Defs.' Resp. 3–4, ECF No. 47. The Tenth Circuit has held that the government has a compelling interest in fostering the culture and religion of federally-recognized Indian tribes. *See United States v. Wilgus,* 638 F.3d 1274, 1288 (10th Cir.2011). Plaintiffs urge this Court to adopt a narrow understanding of this interest, one that recognizes the government's interest in fostering the cultural and religious practices of federally-recognized Indian tribes, but not its interest in fostering the tribes' cultural and religious beliefs. But Tenth Circuit precedent does not suggest such a distinction, and the Court declines to adopt the view that the federal government's compelling interest in fostering the culture and religion of federally-recognized Indian tribes does not encompass fostering and protecting their cultural and religious beliefs. Thus, contrary to Plaintiffs' argument, Defendants had a compelling interest in fostering the Eastern Shoshone's cultural and religious beliefs concerning eagles and properly took those beliefs into account while considering Plaintiffs' permit.

Plaintiffs' second argument is that the Court failed to consider the substantial burden Wyoming's prohibition against eagle take imposes on Plaintiffs' religious exercise. Pls.' Mot. 10, ECF No. 46 ("The judgment did not consider the ban under State law or the additional burden this places on Plaintiffs."). Plaintiffs' argument betrays a misunderstanding of the Court's order. Because the Court based its judgment on the compelling interest/least restrictive means aspect of RFRA, the Court assumed (without deciding) that the permit—including its requirement that Plaintiffs comply with Wyoming law—imposed a substantial burden on Plaintiffs' religious exercise. *See* Order 1216, ECF No. 45. Plaintiffs' argument that the Court overlooked the burden Wyoming law imposes on Plaintiffs' religious exercise ignores that, for purposes of its order, the Court assumed that Plaintiffs were correct that Wyoming law imposes a substantial burden on Plaintiffs' religious exercise.[2]

Plaintiffs' third argument is that the Court misapprehended and misapplied the Tenth Circuit's *Wilgus* decision. *See id.* at 7–9. Not much can be said regarding this argument other than that the Court disagrees with Plaintiffs' understanding of *Wilgus* and believes that the Court correctly applied *Wilgus* to the facts here.

Plaintiffs' fourth argument is that the Court misapprehended Plaintiffs' position by failing to consider other alternatives that Plaintiffs advanced. *See id.* at 11. As a threshold matter, Plaintiffs argued in their brief and at oral argument that the Court should order Defendants to permit Plaintiffs to take eagles within the Reservation. The Court disagrees that Plaintiffs presented the Court with any of the alternatives that Plaintiffs now raise in their present motion. Regardless, Plaintiffs' proposed alternatives—allowing eagle take within the Reservation on lands owned solely by Arapaho tribal members,

---

**2.** The Court has not previously and does not here address the question of whether the permit imposes a substantial burden on Plaintiffs' religious exercise.

on lands owned solely by the Northern Arapaho Tribe, or on lands owned jointly by the Northern Arapaho and Eastern Shoshone—are not materially different than the alternatives the Court considered in its order. All of Plaintiffs' alternatives involve eagle take *within the Reservation,* and it is that feature which formed the basis for the Eastern Shoshone's objection to Plaintiffs' permit application, Defendants' decision to exclude the Reservation from Plaintiffs' permit, and this Court's conclusions in its order. None of Plaintiffs' alternatives advance Defendants' compelling interest in fostering the cultural and religious beliefs of the Eastern Shoshone concerning eagles. Rather, Plaintiffs' alternatives would require Defendants to impermissibly disregard the Eastern Shoshone's cultural and religious objections to eagle take within the Reservation. *See* Order 1217–18, ECF No. 45. Plaintiffs' alternatives are variations on a position that this Court already has rejected. *See id.*

## CONCLUSION

Because the Court concludes that none of Plaintiffs' arguments has merit, the Court **DENIES** Plaintiffs' motion to alter or amend its judgment (ECF No. 46). The Court further **ORDERS** that Plaintiffs advise this Court within fourteen (14) days of this order whether they wish to proceed with their free exercise and APA claims or voluntarily withdraw those claims and seek an appeal.

## ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL

After the United States Fish and Wildlife Service refused to permit the Northern Arapaho Tribe to take eagles within its reservation for use in the Tribe's religious ceremonies, the Tribe brought suit against various Fish and Wildlife Service officials alleging violations of, among other things, the Religious Freedom Restoration Act. This Court eventually granted summary judgment in favor of the Fish and Wildlife Service on the Religious Freedom Restoration Act claims in an order dated November 5, 2012 ("Order"). The Tribe has now filed a motion asking this Court to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b). The Court denies the Tribe's motion.

## FACTS

Plaintiffs are the Northern Arapaho Tribe—a federally-recognized Indian tribe located on the Wind River Indian Reservation in west-central Wyoming—and Jim Shakespeare, a Northern Arapaho tribal member and chairman of the Northern Arapaho Business Council (collectively "Tribe"). Defendants Daniel Ashe and Matt Hogan are officials within the United States Fish and Wildlife Service (collectively "Service").

A few years ago, the Tribe applied to the Service for a permit to take[1] eagles within its reservation for use in the Tribe's religious ceremonies. The Tribe shares the reservation as tenants in common with another federally-recognized Indian tribe, the Eastern Shoshone. *See generally Shoshone Tribe v. United States,* 299 U.S. 476, 57 S.Ct. 244, 81 L.Ed. 360 (1937). The Eastern Shoshone opposed the Tribe's permit application because the Eastern Shoshone oppose killing eagles on cultural and religious grounds. The Service eventually granted the Tribe a permit, allowing it to take up to two adult bald eagles per year within Wyoming, But, as an accommodation to the Eastern Shoshone's objec-

---

1. "Take means pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, destroy, molest, or disturb." 50 C.F.R. § 22.3(2011).

tions, the permit does not allow the Tribe to take eagles within the reservation.

The Tribe then brought suit against the Service, alleging violations of the Free Exercise Clause of the First Amendment, the Administrative Procedure Act, and the Religious Freedom Restoration Act ("RFRA"). The Tribe moved for summary judgment on its RFRA claims and this Court eventually granted summary judgment in favor of the Service on those claims. The Court assumed (without deciding) that the Service's refusal to permit eagle take within the reservation substantially burdened the Tribe's religious exercise, but nevertheless concluded that the Service had not violated RFRA because, under the Tenth Circuit's decision in *United States v. Wilgus,* the Service's decision advanced and balanced its compelling interests in fostering the culture and religion of both the Eastern Shoshone and the Tribe via the least restrictive means.

Understandably, the Tribe wants the Order reversed. Initially, the Tribe invited the Court to reverse itself by filing a motion to alter or amend the Order, but the Court declined that invitation. Hoping for a better outcome in the Tenth Circuit, the Tribe has now filed a motion asking the Court to certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken

from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b) (2006).

The Tribe argues that certification is appropriate because the Order meets § 1292(b)'s criteria. According to the Tribe, the Order involves a controlling question of law—namely, whether the Court correctly applied the Tenth Circuit's *Wilgus* decision to the facts of this case—and there is substantial ground for disagreement on that question because it's both difficult and of first impression. Moreover, recognizing that its free exercise claim largely rises and falls with its RFRA claims, the Tribe argues that an immediate appeal would materially advance the termination of this lawsuit. The Service opposes the Tribe's motion, arguing that the Order satisfies none of § 1292(b)'s criteria.

## DISCUSSION

The Court can certify its Order only if it finds (1) that the Order involves a controlling question of law, (2) as to which there is substantial ground for a difference of opinion, and (3) that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). The Tribe has the burden of demonstrating that these criteria have been met. *See Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010).

▪ The Court denies the Tribe's motion because the Order does not involve a controlling question of law as to which there is a substantial ground for difference of opinion. Controlling questions of law are abstract legal issues that the court of appeals can decide quickly and cleanly without having to study the record. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.,* 219 F.3d 674, 676–77 (7th Cir.2000). "The

phrase 'question of law' as used in 28 U.S.C. § 1292(b) does not refer to a particular application of facts to the law.... [D]istrict courts should certify questions when they are unsure what the law is, not when there is merely a dispute as to how the law applies to the facts of a particular situation." *Certain Underwriters at Lloyd's, London v. Nance,* No. CIV 04–937 JB/WDS, 2006 WL 4109675, at *3 (D.N.M. Aug. 24, 2006).

Here, the Court knows what the law is; it's the law as stated in *United States v. Wilgus,* 638 F.3d 1274 (10th Cir.2011). The parties merely dispute whether the Court correctly applied *Wilgus* to the facts here. In such a situation, certification is inappropriate. And, whether the Court correctly applied *Wilgus* is not an abstract legal question but rather a question that would send the Tenth Circuit deep into the record in this case. Reviewing the record would be unavoidable for the additional reason that the Order was for summary judgment, and "to decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of fact lurking there." *See Ahrenholz,* 219 F.3d at 677. Thus, because the legal question here is how the law applies not what the law is, and because that question is fact-intensive and not abstract, the Court concludes that the Order does not involve a controlling question of law under § 1292(b).

But even if the Order did involve a controlling question of law, the Court would still deny the Tribe's motion because the question is not one as to which there is substantial ground for difference of opinion. "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the

point...." *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir.2010). "[A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference." *Id.* (internal quotation marks omitted). And "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Id.* at 634; 19 James Wm. Moore et al. *Moore Federal Practice* § 203.31(4) (3d ed. 2012) ("A 'substantial ground for difference of opinion' on an issue is not established ... by the fact that the issue is a matter of first impression.").

Here, the Tribe argues that substantial ground for disagreement exists because "the issues arising under RFRA are difficult and of first impression." Pls.' Mem. 6, ECF No. 51–1. But that's not enough to establish that a substantial ground for disagreement exists. The Tribe does not point to any circuit split or any cases analogous to this one that were decided differently. The Tribe thus has not demonstrated that substantial ground for difference of opinion exists and the Court denies the motion on that ground as well.

## CONCLUSION

The Court **DENIES** the Tribe's motion to certify the Court's Order for interlocutory appeal (ECF No. 51) because the Order does not involve a controlling question of law as to which there is a substantial ground for difference of opinion.